561 So.2d 541 (1990)
Thomas H. PROVENZANO, Petitioner,
v.
Richard L. DUGGER, Etc., Respondent.
Thomas H. PROVENZANO, Appellant,
v.
State of Florida, Appellee.
Nos. 73981, 74101.
Supreme Court of Florida.
April 26, 1990.
Rehearing Denied June 26, 1990.
*543 Larry Helm Spalding, Capital Collateral Representative, Billy H. Nolas, Chief Asst. Capital Collateral Representative, Julie D. Naylor, Asst. Capital Collateral Representative, Bret B. Stand and K. Leslie Delk, Staff Attys., Office of the Capital Collateral Representative, Tallahassee, for petitioner/appellant.
Robert A. Butterworth, Atty. Gen., and Richard B. Martell and Margene A. Roper, Asst. Attys. Gen., Daytona Beach, for respondent/appellee.
PER CURIAM.
Thomas Harrison Provenzano, a state prisoner under sentence and warrant of death, files an appeal from the denial of his motion for postconviction relief, a petition for habeas corpus, and a request for stay of execution. We have jurisdiction. Art. V, § 3(b)(1) & (9), Fla. Const.
Aggrieved by his arrest for disorderly conduct, Provenzano threatened to kill the arresting officer. When his case was scheduled for trial, he smuggled some guns into the Orange County Courthouse. A bailiff approached him for the purpose of searching him, and Provenzano began shooting. Before he could be subdued, Provenzano killed one person and shot and injured two others. He was convicted of one count of first-degree murder and two counts of attempted first-degree murder. The trial court followed the jury's recommendation and imposed the death sentence for the first-degree murder. The conviction and sentence of death were affirmed by this Court in Provenzano v. State, 497 So.2d 1177 (Fla. 1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987).
After the governor signed a death warrant, Provenzano filed a petition for post-conviction relief under Florida Rule of Criminal Procedure 3.850. The trial court denied the motion without holding an evidentiary hearing. Provenzano appealed the order of denial to this Court and also filed with us a petition for habeas corpus. In order to give these matters full consideration, we entered an order staying Provenzano's execution.

Motion for Postconviction Relief

I. Whether the summary order of denial was erroneous as a matter of law and fact.
Provenzano argues that the court should have held an evidentiary hearing on his motion. His premise is correct unless the motion and the files and records in the case conclusively show that he is entitled to no relief. Fla.R.Crim.P. 3.850. Therefore, it is necessary to determine whether any of *544 his several claims is legally sufficient to require an evidentiary hearing.

II. Whether Provenzano was competent to stand trial.
Relying upon a recent examination by Dr. Fleming, Provenzano claims that he was not competent to stand trial. The record reflects, however, that this issue was thoroughly explored before the trial commenced. Several doctors were appointed to examine Provenzano, and each of them concluded that he was competent to stand trial. Three psychiatrists testified to this effect at the competency hearing. The trial judge conducted a proper hearing and ruled Provenzano to be competent. Provenzano's assertion that his counsel should have called Dr. Pollack to testify at the competency hearing is without merit. Like the other doctors, Dr. Pollack believed Provenzano to be competent and simply cautioned that he was a violent individual who could become disruptive in court.

III. Trial counsel was ineffective during the guilt phase.
Provenzano asserts that his counsel was ineffective in numerous particulars during the guilt phase of the trial.
A. Provenzano says that his lawyer should have moved for a change of venue. The venue issue came up early in the case when trial counsel stated on the record that he had been advised that any change of venue would involve a trial in St. Augustine and that he preferred the trial to be held in Orlando. He felt that a juror's knowledge of the case would not necessarily be an impediment, since an insanity defense would be presented and he believed an Orlando jury would be more receptive to such a defense than a more conservative one in St. Augustine. Trial counsel stated that this had been explained in detail to Provenzano and that the latter understood that the defense would not be seeking a change of venue. However, when Provenzano later said that he did not think he would be tried by Orange County jurors, even though the trial were held in Orlando, defense counsel made an oral motion for change of venue, subject to the court's determination of whether or not a fair and impartial jury could be selected. Thereafter, a jury was selected and the motion was not formally renewed. In his original appeal, Provenzano contended that venue should have been changed because of the extensive pretrial publicity surrounding the case. In rejecting the claim, this Court observed:
The trial court did not have great difficulty in impaneling a fair and impartial jury. When Provenzano first made his oral motion for change of venue, defense counsel, the prosecutor and the trial judge all agreed that it would be best to attempt to impanel an impartial jury before ruling on the motion. We approved the procedure in Manning v. State, 378 So.2d 274 (Fla. 1979). The fact that defense counsel never renewed his motion for change of venue and the judge never ruled on the motion creates a strong presumption that a fair and impartial jury was ultimately impaneled.
Of the eighty-seven veniremen called, twenty-seven potential jurors expressed fixed opinions as to Provenzano's guilt due to information received pretrial. This is a far cry from Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), in which the United States Supreme Court noted that the trial court had great difficulty in selecting a jury where 268 of 430 veniremen were excused because they were inclined to believe the accused guilty. Rather, this case is more analogous to Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), in which the United States Supreme Court failed to find that the trial court had great difficulty in selecting a jury where only twenty of the seventy-eight persons questioned were excused because they indicated an opinion as to the petitioner's guilt. Further, the trial court did everything within its power to ensure that Provenzano received a fair trial. Any potential juror with even a hint of prejudice was immediately removed for cause, and a comprehensive gag order covered even peripheral participants.
*545 Provenzano, 497 So.2d at 1182-83. It is evident that counsel's decision not to renew the motion for change of venue was a tactical decision. Moreover, it is most unlikely that a change of venue would have been granted because there were no undue difficulties in selecting an impartial jury. Also, as noted in our prior opinion, Provenzano personally acquiesced to the selection of the jury panel after consulting with his attorney, and the defense did not use all of its peremptory challenges. Counsel was not ineffective for not renewing the motion for change of venue, and Provenzano was not prejudiced as a result.
B. The contention that trial counsel should have objected to the testimony of a court official is patently meritless. Judge Conser's testimony was most relevant because he described how the shooting took place.
C. Provenzano points out that his counsel did not object to the standard jury instruction on insanity, which was later determined to be erroneous in Yohn v. State, 476 So.2d 123 (Fla. 1985). In Yohn, this Court held that the instruction did not properly reflect Florida law concerning the burden of proof on insanity. The instruction that was given in Provenzano's trial was the standard jury instruction on the subject and had been given for many years. As we explained in Smith v. State, 521 So.2d 106 (Fla. 1988), there was no constitutional infirmity in the old standard jury instruction, and, even though it erroneously set forth Florida law, it was not so flawed as to deprive a defendant claiming insanity of a fair trial. Furthermore, defense counsel twice told the jury during closing argument, without objection from the state, that the defense did not have to prove that Provenzano was insane and that the defense only had to show that there was a reasonable doubt as to his sanity. The fact that a lawyer in another case raised an objection to this instruction and ultimately succeeded in having it set aside does not mean that Provenzano's counsel was ineffective for not also attacking the instruction.
D. Provenzano also claims that trial counsel was ineffective for failing to object to what he characterizes as victim impact information introduced in violation of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). He refers to a comment by the prosecutor during his opening statement and testimony by one of the witnesses concerning injuries suffered by the victims who were not killed. Some evidence concerning the victims' injuries was appropriate to prove the state's charges of attempted murder. Although counsel may have been able to limit the extent of the reference to the victim's injuries through objections based upon relevancy, we cannot say that counsel was ineffective for failure to make such objections. We can say with confidence that even if such references had been limited, the result would have been unchanged.
E. Provenzano further claims that his counsel should have objected to comments by the prosecutor and the court which diminished the jury's sense of responsibility for its role in capital sentencing in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). The comments which are said to be offending refer to the jury's advisory role concerning the death penalty and to the fact that the final sentencing decision rests with the trial judge. Counsel cannot be faulted for failing to object because the comments in issue were consistent with Florida law on capital sentencing. See Combs v. State, 525 So.2d 853 (Fla. 1988).
F. Most of the balance of what Provenzano claims as derelictions were obvious tactical decisions on the part of counsel, such as the manner in which cross-examination was conducted. With respect to such conduct of his attorney as cannot be termed tactical on its face, Provenzano fails to show even remotely how a different handling of the matters would have most probably changed the result.

IV. Trial counsel was ineffective during the penalty phase.
Provenzano argues that his trial counsel should have called additional witnesses to demonstrate mitigation on his *546 behalf. First, he faults counsel for not presenting expert testimony during the penalty phase concerning his mental condition. However, the defense presented extensive medical testimony during the guilt phase that Provenzano was paranoid. Both Drs. Pollack and Lyons expressed the opinion that Provenzano was insane when the shootings occurred. Such testimony as might have been presented during the penalty phase would have been largely repetitive. Provenzano also argues that counsel was derelict in not calling additional family witnesses to tell of his difficult background. However, Provenzano himself testified in great detail during the penalty phase, thereby giving the jurors an opportunity to observe his conduct and demeanor and to hear his life story. Further, Provenzano's sister described Provenzano's life history in detail in the guilt phase as a predicate for her opinion that he was insane during the shooting. Two other family members also testified concerning his mental condition, and many other witnesses testified about his peculiar conduct. The additional testimony which Provenzano now suggests should have been given would have been largely cumulative. Without reaching the question of whether counsel would have been well advised to present more witnesses with respect to Provenzano's background, we are convinced that had the witnesses whose testimony is now proffered been presented, the result would have been the same. Thus, Provenzano clearly failed to meet the second prong of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

V. Because of failure on the part of defense counsel and the mental health experts, the opinions of these experts were rendered professionally inadequate.
This claim is based largely on a recent 1989 psychological examination by Dr. Fleming of Wyoming, who concluded that Provenzano was suffering from paranoid psychosis both during the shooting and at the time of the trial. However, this is the same diagnosis given by Drs. Lyons and Pollack when they testified at the trial that Provenzano was insane at the time of the offense. Provenzano's suggestion that they were more vulnerable to cross-examination because they had not obtained as much information concerning Provenzano's background as had Dr. Fleming does not provide a predicate for postconviction relief. Four experts testified at the trial concerning Provenzano's mental condition. The mere fact that Provenzano has now secured an expert who might have offered more favorable testimony is an insufficient basis for relief. Stano v. State, 520 So.2d 278 (Fla. 1988). The cases of State v. Sireci, 502 So.2d 1221 (Fla. 1987), and Mason v. State, 489 So.2d 734 (Fla. 1986), are fully distinguishable on their facts.

VI. The state's intentional withholding of material and exculpatory evidence violated Provenzano's constitutional rights.
Provenzano makes no factual allegations in support of his contention that the prosecutor withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Rather, he contends that the court erred in refusing to require the state attorney to provide access to the state attorney's file on Provenzano's prosecution under the public records law, chapter 119, Florida Statutes (1989). Provenzano asserts that had his request to examine the state attorney's file been granted, he would then have been in a position to make specific Brady allegations. At this Court's request, the parties submitted supplemental briefs on this issue.
The state justifies the refusal to provide access to the state attorney's file upon section 119.07(3)(d), Florida Statutes (1989), which exempts the disclosure of active criminal investigative information and section 119.07(3)(o), Florida Statutes (1989), which exempts certain portions of attorney work product from disclosure until the conclusion of litigation. The state contends that both exemptions apply because Provenzano has now filed a motion for postconviction relief.
However, this Court has recently rejected these arguments in State v. Kokal, 562 So.2d 324 (Fla. 1990). Relying upon the rationale *547 of Tribune Co. v. Public Records, 493 So.2d 480 (Fla. 2d DCA 1986), review denied, 503 So.2d 327 (Fla. 1987), we held that criminal investigative information with respect to a defendant is no longer active when his conviction and sentence have become final. We also held that the exemption under section 119.07(3)(d) expired when the defendant's conviction and sentence became final.
Thus, it appears that a substantial portion of the state attorney's files on Provenzano may be obtained under chapter 119. We recognize that as in Tribune Co., the ordinary legal recourse for obtaining public records is through a civil action. However, where a defendant's prior request for the state attorney's file has been denied, we believe that it is appropriate for such a request to be made as part of a motion for postconviction relief. If nothing else, this will avoid the necessity of two separate actions. In the event a disclosure is ordered, the defendant will then have an opportunity to amend his motion to allege any Brady claims which might be exposed.

Petition for Habeas Corpus
Of Provenzano's twelve claims, the following are procedurally barred:
(1) The penalty phase jury instructions impermissibly shifted the burden of proof to the defendant (no objection to instruction and not raised on direct appeal). Jones v. Dugger, 533 So.2d 290 (Fla. 1988).
(2) The finding of the aggravating circumstance that the murder was cold, calculated, and premeditated was error (argued but rejected on direct appeal).[1]
(3) The remaining four aggravating circumstances were unconstitutionally applied to Provenzano (either rejected or not argued on direct appeal).
(4) The jury was improperly advised that they were not to consider sympathy (no objection at trial and not raised on direct appeal).
(5) The prosecutor's closing argument during penalty phase was fundamentally unfair (argued and rejected on direct appeal).
(6) The trial judge erroneously failed to find mitigating circumstances set forth in the record (argued and rejected on direct appeal).
Provenzano's remaining claims allege instances of ineffective assistance of appellate counsel, and we shall address each of these claims.
Provenzano contends that he received ineffective assistance of appellate counsel due to the failure to argue on direct appeal that the instructions given the jury on insanity were constitutionally inadequate. He points to this Court's decision in Yohn v. State, 476 So.2d 123 (Fla. 1985), in which virtually identical jury instructions (the standard jury instruction on insanity at that time) were held to inadequately describe the substantive law of Florida on this issue. Even though our decision in Yohn was rendered while Provenzano's appeal was pending, his attorney cannot be faulted for not raising the point because no objection was interposed with regard to this instruction nor was any additional instruction requested. In Yohn, trial counsel had preserved the issue by specifically requesting alternative instructions. Moreover, Provenzano cannot argue that appellate counsel should have asserted that the insanity instruction was fundamental error because this Court has now held that the insanity instruction disapproved in Yohn is not fundamental error which requires reversal in the absence of an objection. Smith v. State, 521 So.2d 106 (Fla. 1988).
Provenzano further argues that his appellate counsel was ineffective for failing to assert that Provenzano was absent during critical stages of his trial. Provenzano alleges that he was not present during a hearing on several pretrial motions, during the charge conference, and while a motion for mistrial was being made after the state's closing argument. Assuming *548 Provenzano was absent on these occasions,[2] Provenzano's claim of ineffective assistance of counsel does not meet the requirements of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). None of these occurrences can be viewed as critical stages of the trial. Fla.R.Crim.P. 3.180(a); Howard v. State, 484 So.2d 1319 (Fla. 3d DCA), review denied, 492 So.2d 1332 (Fla. 1986). Provenzano could not have made a meaningful contribution to counsel's legal arguments on these occasions. Thus, appellate counsel cannot be considered ineffective for failing to argue a point which would have had little chance of success before this Court.
Appellate counsel is also attacked for failing to argue that admonitions given the jury upon release from sequestration at the conclusion of the guilt phase of the trial were inadequate. However, appellate counsel cannot be faulted for not raising this issue because no objection was interposed to the instruction which was given, and when the jury reconvened, no request was made for inquiry as to whether the jury had considered impermissible matters. Furthermore, the judge did advise the jurors that during their separation prior to sentencing they should not allow anyone to discuss the case with them, and there has been no showing that any juror was tainted by extraneous publicity.
Provenzano also claims that appellate counsel was ineffective for failing to argue that improper victim information was adduced at his trial and sentencing in violation of the principles of Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). Provenzano identifies several instances of what he asserts to be improper victim information. Trial counsel did not object to one of these, thereby precluding an effective argument on appeal. Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989). Objections were sustained in two other instances, and no motion for mistrial was requested. Thus, appellate counsel would not have been able to argue that the trial court had committed error. Clark v. State, 363 So.2d 331 (Fla. 1978), receded from on other grounds, State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). In one instance, trial counsel did move for a mistrial, asserting certain emotionalism engendered by the playing of a tape recorder. However, appellate counsel raised this claim on appeal, but it was rejected by this Court.
Finally, Provenzano argues that appellate counsel should have argued that the Court erred in permitting, over defense objection, the testimony of the wife of one of the victims at the sentencing proceeding. At the outset, it is difficult to see how counsel could be deemed to be ineffective if, as Provenzano asserts, the recent decision of Booth v. Maryland represented a substantial change in the law. However, assuming, without deciding, that counsel was ineffective for failing to argue the point, Provenzano cannot meet the prejudice test of Strickland v. Washington. This testimony was not presented in connection with the sentencing for the capital offense of first-degree murder. The testimony of Mrs. Dalton was directed to the sentencing for the attempted murder of her husband, even though it was given at the same hearing at which Provenzano was being sentenced for first-degree murder. Moreover, no jury was present at the time this testimony was given because the jury had already rendered its penalty recommendation the week before. Therefore, the point would not have resulted in the reversal of Provenzano's sentence even if it had been raised. See Grossman.
Provenzano also says that his appellate counsel was ineffective for failing to argue that a crime scene photograph of the victim was improperly admitted into evidence. His trial counsel objected to the photograph as being inflammatory, but the state contended that the photograph was *549 relevant to show the extent of the wounds which the victim suffered which was in turn relevant to the issue of premeditation. While this claim was preserved for appellate review, it is well established that counsel need not raise every nonfrivolous issue revealed by the record. See Jones v. Barnes, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). One of appellate counsel's responsibilities is to "winnow out" weaker arguments on appeal and to focus upon those most likely to prevail. Smith v. Murray, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986). This Court has consistently held that simply because photographs are offensive or such as "might tend to inflame the jury," they are nevertheless admissible as long as they are relevant. Henderson v. State, 463 So.2d 196 (Fla.), cert. denied, 473 U.S. 916, 105 S.Ct. 3542, 87 L.Ed.2d 665 (1985). Photographs must only be excluded when they demonstrate something so shocking that the risk of prejudice outweighs its relevancy. Alford v. State, 307 So.2d 433 (Fla. 1975), cert. denied, 428 U.S. 912, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). With respect to this argument, Provenzano falls short on both prongs of the test prescribed by Strickland v. Washington.
Finally, Provenzano argues that his appellate counsel was ineffective for failing to argue that the jury's sentencing responsibility was diminished in violation of Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Counsel cannot be deemed ineffective for failing to argue this point because no objections were made to the comments which are now said to violate Caldwell. The United States Supreme Court has recently held that in order to make this contention, an appropriate objection must be made. Dugger v. Adams, 489 U.S. 401, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989).

Remaining Claims
Provenzano's remaining claims are without merit and need not be discussed.

Conclusion
We affirm the order denying the motion for postconviction relief. However, the state attorney shall disclose to Provenzano's attorney those portions of his file covered by chapter 119 as interpreted in State v. Kokal, 562 So.2d 324 (Fla. 1990). The two-year time limitation of Florida Rule of Criminal Procedure 3.850 shall be extended for sixty days from the date of such disclosure solely for the purpose of providing Provenzano with the opportunity to file a new motion for postconviction relief predicated upon any claims under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), arising from the disclosure of such files. In this manner, Provenzano will be placed in the same position as he would have been if such files had been disclosed when they were first requested. The petition for habeas corpus is denied. The stay of execution is also vacated, although the death warrant which prompted these proceedings has long since expired.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.
NOTES
[1] The contention that prior findings of "cold, calculated, and premeditated" should be reevaluated in light of Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, 484 U.S. 1020, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988), was rejected in Eutzy v. State, 541 So.2d 1143 (Fla. 1989).
[2] It appears that Provenzano was present for the hearing on the pretrial motions. While the transcript makes no express reference to him, the court minutes indicate that he was present. The record reflects that defense counsel specifically waived Provenzano's presence on the other two occasions.