616 So.2d 428 (1993)
Thomas H. PROVENZANO, Appellant,
v.
STATE of Florida, Appellee.
No. 78410.
Supreme Court of Florida.
February 11, 1993.
Rehearing Denied April 26, 1993.
*429 Thomas H. Provenzano, pro se.
Larry Helm Spalding, Capital Collateral Representative, Martin J. McClain, Chief Asst. CCR, Kenneth D. Driggs, Asst. CCR and Harun Shabazz, Staff Atty., Office of Capital Collateral Representative, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Kellie A. Nielan, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
Thomas Harrison Provenzano, a prisoner under sentence of death, appeals from the circuit court's denial of his motion for post-conviction *430 relief filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution.
Provenzano was convicted of the murder of a bailiff in the Orange County Courthouse and the attempted murder of two other corrections officers. He relied on an insanity defense at trial. The jury recommended death by a vote of seven to five, and the trial judge followed this recommendation. Provenzano's conviction and sentence were affirmed on direct appeal. Provenzano v. State, 497 So.2d 1177 (Fla. 1986), cert. denied, 481 U.S. 1024, 107 S.Ct. 1912, 95 L.Ed.2d 518 (1987). After his first death warrant was signed, Provenzano filed a 3.850 motion, which was denied by the circuit court without an evidentiary hearing. This Court affirmed the denial on appeal and rejected Provenzano's petition for habeas corpus. Provenzano v. Dugger, 561 So.2d 541 (Fla. 1990). At the same time, we held that Provenzano was entitled to disclosure of those portions of the state attorney's file covered by the public records law, Chapter 119 of the Florida Statutes (1989). Provenzano was given sixty days from disclosure to file a new 3.850 motion asserting any Brady[1] claims arising from the contents of the file. Id. at 549. Provenzano then filed the instant 3.850 motion, which was denied without an evidentiary hearing.
Provenzano first argues that the State failed to disclose a psychiatric report prepared by Dr. Abraham, Provenzano's jail records, and the notes of one of the State's expert witnesses, Dr. Wilder. In order to prevail on this claim, Provenzano must demonstrate that the State suppressed material, exculpatory information. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). There is no Brady violation where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence. Hegwood v. State, 575 So.2d 170, 172 (Fla. 1991); James v. State, 453 So.2d 786, 790 (Fla.), cert. denied, 469 U.S. 1098, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984).
We approve the circuit court's finding that the information allegedly suppressed in this case either was in the possession of the defense or could have been obtained from sources other than the State. Provenzano's first attorney, Steven Horneffer, was obviously aware of the psychiatric report. Two days after the shootings, Horneffer filed a Motion for Controlled Access to Defendant's Medical Records which requested that the court seal the records of the interview by Dr. Abraham to everyone but Provenzano, his attorneys, and any medical experts appointed by the court. Although Horneffer was subsequently replaced by a different attorney, this attorney either had or could have had Abraham's report, and it therefore does not constitute Brady material.
We find the same to be true of the jail records and Dr. Wilder's notes. Provenzano's jail records could have been obtained from jail officials, had defense counsel so desired. Dr. Wilder stated at trial that he took notes while interviewing Provenzano, and in fact he used these notes while testifying. If defense counsel wanted to examine the notes he merely had to ask to see them at that time.
Provenzano alternatively argues that counsel was ineffective for failing to discover the above information or to present it to the jury. The State contends that this claim is procedurally barred, since Provenzano raised the issue of counsel's ineffectiveness in his prior 3.850 motion. See Jones v. State, 591 So.2d 911, 913 (Fla. 1991) (claims of ineffective assistance of counsel cannot be litigated on a piecemeal basis by filing successive motions). Given the unusual circumstances of this case, we reject this argument. Our remand after Provenzano's initial 3.850 motion was designed to put Provenzano in the same position he would have been in if the files had been disclosed when first requested. Provenzano, 561 So.2d at 549. Given that Provenzano's ineffectiveness claims have *431 arisen as a direct result of the disclosure of the file, we find that they are timely raised.
Accordingly, we turn now to the merits of Provenzano's claim. In order to establish ineffectiveness, Provenzano must demonstrate that counsel's performance was deficient and that there is a reasonable probability that the result of the proceeding would have been different absent the deficient performance. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
Provenzano first contends that counsel was ineffective for failing to discover or present to the jury the contents of Dr. Abraham's report. Dr. Abraham interviewed Provenzano immediately following the shootings, when he was brought to the hospital to be treated for gunshot wounds. In her report, Abraham discusses Provenzano's delusions of persecution by the police and the paranoid trend in his life over the past few years. She notes that Provenzano's arrest several months before the shootings might have led to his paranoid delusions about the police, which culminated in his acting violently upon his perceived persecutors. Abraham concluded that Provenzano suffers from chronic paranoid psychosis.
At trial, five psychiatric experts testified, two for the defense and three for the State. All experts agreed that Provenzano was a paranoid individual. Both of the defense experts concluded that Provenzano had a paranoid psychosis and that he was delusional. They also went on to state that as a result of this psychosis Provenzano was unable to tell right from wrong on the day of the shootings.
The State experts agreed that Provenzano was paranoid, but disagreed with the defense experts' conclusions regarding the extent of his paranoia. Dr. Wilder and Dr. Gutman concluded that Provenzano had a paranoid personality, but that it did not rise to the level of the mental illness of paranoia. Dr. Gutman opined that Provenzano used his paranoia to get attention, and therefore he did not believe that Provenzano's paranoid beliefs were delusional. Dr. Kirkland, on the other hand, concluded that Provenzano was a very disturbed person with delusional paranoid beliefs. Kirkland diagnosed Provenzano as having an antisocial personality disorder with strong paranoid trends. All State experts agreed that Provenzano's mental problems did not rise to the level of insanity.
In arguing that Dr. Abraham's report would have made a difference at trial, Provenzano emphasizes that Abraham examined him on the very day the crimes occurred. While we agree that this fact, as well as the fact that Abraham was a "neutral" expert, may have bolstered the credibility of her report, it is certainly not dispositive. The timing of the experts' examinations of Provenzano was never an issue at trial. Unlike the case where a defendant is examined after an extended time has passed since the crime and the expert is forced to relate everything back to that time, here Provenzano was actually tried only six months after the shootings occurred. The psychiatric examinations conducted before trial necessarily took place near the time of the shootings. In fact, one defense expert conducted his examination only ten days after the crimes took place.
Further, Dr. Abraham was given no information about Provenzano's background or the specific circumstances of the crimes except Provenzano's self report. She conducted no psychological tests and drew no conclusions about Provenzano's sanity on the day of the crime. Much of her report would have bolstered the State's evidence that Provenzano was lucid and coherent after the shootings.
Although Abraham's report corroborated the conclusions of defense experts that Provenzano had a paranoid psychosis, this was not the issue the jury was asked to decide at trial. The State experts also agreed that Provenzano suffered from paranoia, but then went on to opine that the paranoia did not render him insane. Given that the jury found Provenzano to be sane and recommended a death sentence despite the testimony of two defense experts and one State expert that Provenzano had severe paranoid delusions, the introduction *432 of another report discussing Provenzano's paranoia was not likely to have made a difference. We cannot conclude that there is a reasonable probability that the introduction of this report would have changed the outcome of the trial.
Given our resolution of the prejudice prong of the Strickland test, we do not reach the issue of whether counsel's failure to present Dr. Abraham's report constituted deficient performance. However, we find that Provenzano's contention that counsel was ineffective for failing to provide Abraham's report to its expert witnesses is refuted by the record, which reflects that the defense experts were aware of Provenzano's medical records from his stay in the hospital following the shootings, including Abraham's report.
Provenzano also alleges that counsel was ineffective for failing to discover or present to the jury Provenzano's jail records, which provided a daily log of Provenzano's behavior in jail while awaiting trial. These records indicated that Provenzano was calm and cooperative in jail. This evidence contradicts the defense's theory that Provenzano suffered from paranoid delusions about persecution from uniformed law enforcement officers, since obviously Provenzano was constantly confronted by uniformed officers in jail, yet he adjusted well. Accordingly, we find no deficient performance on the part of counsel for failing to introduce these records.
Finally, Provenzano alleges that counsel was ineffective for failing to discover or present to the jury Dr. Wilder's notes. The most relevant item cited by Provenzano as contained in these notes is Dr. Wilder's comment that Provenzano was afforded "the privacy that security would permit." Evidently, Provenzano was treated this way in consideration of his belief that certain jail personnel unnecessarily invaded his privacy, as Wilder explained at trial. We fail to see how the introduction of Wilder's notes could have influenced the jury's decision at either the guilt or penalty phase of trial, and we therefore see no reason why competent counsel would have chosen to introduce them.
Provenzano next contends that the circuit court erred in striking his pro se pleadings filed below and in denying counsel's motion to adopt the pleadings. Here, the case was remanded solely to address any issues arising from disclosure of the state attorney's file. Most of Provenzano's claims were unrelated to the limited purpose of the remand and his scant references to papers in the state attorney's file would not have provided any basis for relief. Further, counsel's motion to adopt Provenzano's pleadings was filed after the State had already filed a response to counsel's 3.850 motion. Granting counsel's motion to adopt would therefore have caused delay in the proceedings while the State amended its response to address these additional arguments. The only reason counsel presented for moving to adopt the pleadings was that Provenzano had taken an active interest in his case. Under these circumstances, we find no abuse of discretion in the circuit court's rulings.
Finally, Provenzano argues that the circuit court erred in denying his motion for recusal. As grounds for the motion, Provenzano cited the extensive pretrial publicity, the judge's denial of Provenzano's previous 3.850 motion without an evidentiary hearing, and the judge's denial of an attorney's motion to appear pro hac vice to represent Provenzano in the proceedings below. We agree with the circuit court that these grounds are legally insufficient for disqualification. There was nothing noted in the pretrial publicity which was attributed to Judge Shepard or which would have given Provenzano a reasonable fear that Judge Shepard would be biased. Cf. Suarez v. Dugger, 527 So.2d 190, 192 (Fla. 1988) (statements published in newspaper which were attributed to judge were sufficient to demonstrate prejudice). If pretrial publicity alone were enough to disqualify a judge, no judge would be able to hear any highly publicized case. As to the latter two grounds, adverse legal rulings are not a proper basis for disqualification. Gilliam v. State, 582 So.2d 610, 611 (Fla. 1991).
*433 For the foregoing reasons, we affirm the denial of Provenzano's 3.850 motion.
It is so ordered.
OVERTON, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.
BARKETT, C.J., concurs in result only.
McDONALD, J., recused.
NOTES
[1] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).