DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**KENEIL O. DENTON,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D17-618

[May 2, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Laura S. Johnson, Judge; L.T. Case No. 50-2016-CF-005299-AXXX-MB.

Carey Haughwout, Public Defender, and Stacey Kime, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Georgina Jimenez-Orosa, Senior Assistant Attorney General, West Palm Beach, for appellee.

LEVINE, J.

The primary issue in this case was identity. After the victim's house was burglarized, fingerprints and DNA samples were taken from the crime scene. Eventually, appellant—then in custody for unrelated offenses—was charged with the burglary. At trial, the evidence connecting appellant to the burglary consisted of a fingerprint found at the crime scene and the victim's identification of appellant as someone he had seen in the neighborhood on several occasions. Based on this evidence, appellant was found guilty of burglary.

Appellant appeals his conviction. He raises three issues, but we address only one: whether the state's untimely production of an exculpatory or impeaching crime scene DNA report warrants reversal. Here, the state's production of the initial letter referencing a DNA test conducted by a third-party lab, its untimely production of the report containing the results of that third-party test, and the state's actions regarding the DNA report lulled appellant into inaction. Because this rose

to the level of a *Brady* violation, we reverse the conviction and remand for a new trial.

Roughly two weeks before trial, the state filed a supplemental witness list identifying a Palm Beach County Sheriff's Office ("PBSO") forensic scientist as a potential trial witness. Attached to this notice was a letter from the forensic scientist explaining that a DNA analysis had been conducted and a third-party DNA report forwarded to PBSO for review and entry into its database.

After receiving this notice and the attached letter, defense counsel emailed the prosecutor to ask whether there was any DNA tested in the case linking appellant to the robbery. The prosecutor responded that she did not know whether any testing had been done. Defense counsel did not receive the DNA report referenced in the letter at this time.

The issue of DNA reports arose again at trial. There, the state reiterated that it had "no report as to any DNA whatsoever." The state did not introduce any DNA reports into evidence, nor did it call the PBSO forensic scientist to testify. Instead, it relied primarily on fingerprint evidence and the victim's testimony to establish appellant as the burglar. The jury returned a guilty verdict on the burglary charge.

Alleging a *Brady* violation, defense counsel moved for a new trial. At the hearing on appellant's motion for new trial, the PBSO forensic scientist testified regarding the report referenced in her letter. She explained that the report did not contain allele matches consistent with appellant's DNA. Rather, the genetic profile from the scene returned a "major profile" consistent with the victim and a second, "minor profile" that did not contain alleles matching appellant's profile.

Maintaining that no discovery violation had occurred, the trial court denied appellant's motion and adjudicated him guilty on the burglary charge. This appeal follows.

We conduct independent appellate review of whether a *Brady* violation has occurred. *Geralds v. State,* 111 So. 3d 778, 787 (Fla. 2010). In doing so, we defer to the trial court on questions of fact, review de novo the application of the law to those facts, and independently review the cumulative effect of any evidence that was suppressed. *Id.*

The seminal case of *Brady v. Maryland,* 373 U.S. 83 (1963), requires the state to disclose material information within its possession or control that is favorable to the defense. A *Brady* violation occurs when the

defendant can show that the state suppressed evidence and "(1) the evidence was either exculpatory or impeaching; (2) the evidence was willfully or inadvertently suppressed by the State; and (3) because the evidence was material, the defendant was prejudiced." *Davis v. State*, 136 So. 3d 1169, 1184 (Fla. 2014).

The forensic scientist's testimony at the post-trial hearing establishes the DNA report as exculpatory or impeaching *Brady* evidence. The report contained two genetic profiles, neither of which was consistent with appellant's profile. In this regard, it was "favorable" to appellant and therefore had exculpatory or impeaching value, as it cast doubt on the evidence presented as well as the strength of the state's case. *See Way v. State*, 760 So. 2d 903, 910 (Fla. 2000) (stating that evidence meets the first prong of *Brady* "merely if it is 'favorable to the accused, either because it is exculpatory, or because it is impeaching'") (quoting *Strickler v. Greene*, 527 U.S. 263, 280 (1999)).

In this case, the burglar's identity was at issue and the sole identifying evidence was a contested fingerprint and the victim's testimony that appellant was his neighbor's friend and often in the area. Under these circumstances, the DNA report casting doubt upon appellant's presence at the crime scene constituted exculpatory or impeaching *Brady* evidence.

The second prong of *Brady* is the state's willful or inadvertent suppression of evidence. *Davis*, 136 So. 3d at 1184. Generally, there is no *Brady* violation "where the information is equally accessible to the defense and the prosecution, or where the defense either had the information or could have obtained it through the exercise of reasonable diligence." *Provenzano v. State*, 616 So. 2d 428, 430 (Fla. 1993).

Here, however, there was no such equal access and the state's responses to defense counsel's requests for information amounted to suppression in that the responses lulled the defense into believing that there were no DNA results. While the state did provide a letter referencing the DNA report, the prosecutor subsequently and repeatedly misinformed defense counsel by asserting that no DNA testing had been done in this case. In reliance on the state's declarations that no DNA report existed, defense counsel apparently did not attempt to locate or subpoena the report referenced in the forensic scientist's letter.

Since appellant was told that the crime scene DNA was not tested, he could not have known or had access to the potentially exculpatory or impeaching DNA report that was available to the state. Thus, any "notice" provided by the forensic scientist's letter was rendered ineffective by the

state's repeated incorrect assertion that it had not received a DNA report and the report was effectively suppressed. *See id.*

Finally, the suppressed DNA report here satisfies *Brady*'s materiality prong. *See Davis*, 136 So. 3d at 1184. Evidence is material for *Brady* purposes if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *Allen v. State*, 854 So. 2d 1255, 1260 (Fla. 2003). Here, there is a reasonable probability that, had the defense received the DNA report, it would have called the forensic scientist to testify and cast doubt on the state's case.

As demonstrated by the scientist's testimony at the hearing on a motion for new trial, she would have testified that the DNA report's "minor profile" alleles were not the same as the alleles in appellant's DNA profile. Given that identity was the main issue at trial, this sort of testimony could have reasonably affected the outcome of the proceeding, so the suppressed report was material. *See id.*

In this case, a number of factors uniquely converged so as to give rise to a *Brady* violation. The state, after producing a letter acknowledging the existence of a DNA report in PBSO's possession, repeatedly told defense counsel that it had no such report and that no DNA testing had occurred. In fact, the state had in its constructive possession a report containing the results of DNA tests run by a third-party lab. As PBSO's forensic scientist noted at a post-trial hearing, the suppressed DNA report contained two genetic profiles from the crime scene sample, but neither was consistent with appellant's profile. Because such evidence could have reasonably changed the outcome of this forensically driven case, we reverse appellant's burglary conviction and remand the case for a new trial.

*Reversed and remanded.*

WARNER and GROSS, JJ., concur.

\*　　　\*　　　\*

**Not final until disposition of timely filed motion for rehearing.**

4