# Supreme Court of Florida

_____

No. SC2024-1128
_____

**TONEY DERON DAVIS,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

July 17, 2025

PER CURIAM.

Toney Deron Davis, a prisoner under sentence of death for the 1992 murder of two-year-old Caleasha Cunningham, appeals the circuit court's order summarily denying his fourth successive motion for postconviction relief, filed under Florida Rule of Criminal Procedure 3.851. Davis claims that the contents of certain microscopic slides generated by the medical examiner during the victim's autopsy in 1992 constitute newly discovered evidence that "disproves the State's theory of the case, including the cause of death." Davis also claims that the contents of the slides were

suppressed by the State in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons explained below, we affirm.

## I. BACKGROUND

Davis was convicted of first-degree felony murder, aggravated child abuse, and sexual battery, stemming from events that occurred on December 9, 1992. *Davis v. State*, 703 So. 2d 1055, 1056 (Fla. 1997); *see id.* at 1056-57 (recounting the evidence presented at Davis's trial). On that day, Davis was alone with the victim in her mother's apartment. *Id.* at 1056. After a 911 call made by Thomas Moore—an acquaintance of Davis's who testified that he (Moore) went to the apartment that day, "that Davis answered the door with the victim draped over his arm," and that "Davis told him [the victim] had choked on a french fry," *id.*—rescue personnel arrived at the apartment and found the victim unconscious, wet, naked from the waist down, and with blood both in her mouth and coming from her vaginal canal, *id.* at 1056-57, 1060. There was blood in various areas of the apartment, and "[t]here was blood which was found to be the victim's on the crotch region of the shorts Davis was wearing and on his underwear." *Id.*

- 2 -

at 1057.

When the victim was taken to the hospital on December 9, she had "bruising, swelling of the brain, and pools of blood in the skull." *Id.* She died the next day. *Id.* The medical examiner, Dr. Bonifacio Floro, concluded that the victim died from a cerebral hemorrhage caused by "four separate blows to the head." *Id.*

For his part, Davis, who told others he was alone with the victim, testified that he left the victim and Moore alone in the apartment and "that when he returned, Moore was gone and [the victim] was having a seizure." *Id.* at 1056. Davis further testified that he "accidentally dropped [the victim] in the shower" while attempting to revive her. *Id.* The jury rejected Davis's testimony, found him guilty, and recommended a sentence of death for the murder—a sentence that the trial court imposed. *See id.* at 1057. This Court affirmed in 1997. *Id.* at 1062.

In 2014, this Court affirmed the denial of Davis's initial motion for postconviction relief and denied Davis's first state habeas petition. *Davis v. State*, 136 So. 3d 1169, 1209 (Fla. 2014). During

- 3 -

its discussion of certain *Brady* and *Giglio*[1] claims raised by Davis, this Court noted the "[o]verwhelming" and "ample" evidence presented by the State that a severe beating and the victim's fatal injuries occurred on December 9, 1992. *Id.* at 1185, 1189-90. And in rejecting a "claim that trial counsel was ineffective for failing to present—as Davis's primary defense—the theory that Moore was responsible," and for instead "argu[ing] an accidental death theory," *id.* at 1192, this Court concluded in part that "the evidence created the impression that Davis manufactured his defense of blaming Moore as the investigation progressed," *id.* at 1193.

In 2017, this Court affirmed the summary denial of Davis's first successive motion for postconviction relief. *Davis v. State*, No. SC16-264, 2017 WL 656307, at *2 (Fla. Feb. 17, 2017). Although Davis's initial motion had faulted trial counsel for advancing "an accidental death theory," *Davis*, 136 So. 3d at 1192, Davis's first successive motion included a "claim that newly discovered evidence . . . support[ed] his own theory that the victim's fatal injuries resulted from an accidental fall or prior abuse," *Davis*, 2017

---

1. *Giglio v. United States*, 405 U.S. 150 (1972).

- 4 -

WL 656307, at *1.  In any event, this Court concluded in part that the evidence was not material, given the "ample evidence at trial that Davis committed each of the acts charged."  *Id.*

Davis's second successive motion was summarily denied, and he did not appeal.  Instead, he petitioned this Court for a writ of habeas corpus, which this Court denied in 2018.  *Davis v. Jones*, 235 So. 3d 301, 301 (Fla. 2018).

Most recently, in 2020, we affirmed the summary denial of Davis's third successive motion.  *Davis v. State*, 304 So. 3d 281, 282 (Fla. 2020).  There, Davis presented a *Brady* claim and a *Giglio* claim involving a State witness, Janet Cotton, who recanted her trial testimony.  *Id.* at 284.  Davis attached to his motion not just an affidavit from Cotton, but certain additional evidence, including a 2019 Report of Consultation from Dr. Jonathan L. Arden (a forensic pathologist), who disputed the scientific validity of the medical testimony presented by the State at trial.  Dr. Arden opined, for example, that "the demonstrated head injuries were not sufficient to cause death."  This Court ultimately concluded that Davis's claims regarding Cotton both "fail[ed] on the materiality prong."  *Id.* at 285.  As to the *Giglio* claim, this Court further

- 5 -

concluded that Cotton's statement lacked materiality even if "considered cumulatively with evidence presented in prior postconviction claims." *Id.* at 285 n.3. And as to the *Brady* claim, this Court dismissed "[t]he additional evidence" Davis presented, concluding that it was "barred," "immaterial," "or untimely or otherwise improperly presented." *Id.* at 286 n.4.

In the instant motion, Davis raised a *Brady* claim and a claim of newly discovered evidence. Both claims rely on a supplemental report produced by Dr. Arden in 2022 after Dr. Arden examined the autopsy slides from 1992. In his supplemental report, Dr. Arden concluded that the slide contents are consistent with the victim having pre-admission pneumonia, which possibly explains her respiratory distress. Although Dr. Arden concluded that the victim "had pneumonia when she died," Dr. Arden was more equivocal in terms of the onset of the pneumonia. At one point, Dr. Arden seemingly conceded that "the pneumonia could have developed during the one day in the hospital when the child was comatose on the ventilator." Elsewhere, Dr. Arden noted that the victim "possibly [had] a developing pneumonia," which "could have been a cause of her respiratory distress and collapse." In any event, the

gist of Davis's motion was that "a hypoxial event" (in this case, caused by a viral infection) rather than blunt trauma to the head is more consistent with the findings in the victim's brain.

Davis's appendix to the instant motion included Dr. Arden's supplemental report and numerous other items, some of which Davis included in his prior motion. One item was imaging reports, completed during the victim's hospitalization, suggesting "that the intubation of the child may have contributed to some lung injuries," that one tube was placed in the wrong location, and that the victim's lungs started to clear once that tube was moved.

Davis presented the instant claims in the face of a significant obstacle. That is, the 1992 autopsy report, which was provided to the defense decades ago, not only revealed the existence of the slides but also included Dr. Floro's finding of pneumonia. Davis sidesteps those facts by arguing that, until recently, he had no reasonable ground on which to have the slides examined, given that Dr. Floro "essentially testified" pretrial that "he believed [the victim] contracted [the pneumonia] after admission," and that he told "the jury that he did not see 'any evidence of lung disease.' "

The circuit court was unconvinced. After a *Huff*[2] hearing, the court summarily denied Davis's motion. The court denied Davis's *Brady* claim on the ground that Davis failed to establish that the slides were "willfully or inadvertently suppressed." The court reasoned that "the slides were disclosed" and "available for examination," and that a new expert examining the slides and reaching a different conclusion than the State's expert "does not create a *Brady* violation." As to Davis's claim of newly discovered evidence, the court concluded that Davis failed to establish either that the evidence could not have been known by the use of due diligence, or that the evidence was of such nature as to probably produce an acquittal or life sentence on retrial. Regarding materiality, the court analogized Davis's argument to his french-fry-based argument rebutted at trial. The court then explained why "[t]he victim's injuries have never been consistent with accident or illness," including that she "was naked from the waist down" and that her "blood was *in* [Davis's] shorts and underwear."

This appeal followed.

2. *Huff v. State*, 622 So. 2d 982 (Fla. 1993).

- 8 -

## II.  POSTCONVICTION APPEAL

Our standard of review of the summary denial of a successive rule 3.851 motion is de novo.  *Bogle v. State*, 322 So. 3d 44, 46 (Fla. 2021) (citing *Duckett v. State*, 231 So. 3d 393, 398 (Fla. 2017)).  "[A] summary denial will be upheld if the motion is legally insufficient or procedurally barred, or if its allegations are conclusively refuted by the record."  *Sparre v. State*, 391 So. 3d 404, 405 (Fla. 2024) (citing *Morris v. State*, 317 So. 3d 1054, 1071 (Fla. 2021)).  And in a case like this, "when a defendant brings any claim in a successive motion more than one year after the judgment and sentence became final, he must meet an exception to the time-limit rule— otherwise, the claim is barred."  *Stein v. State*, 406 So. 3d 171, 174 (Fla. 2024) (citing Fla. R. Crim. P. 3.851(d)(2), (e)(2)).

Here, neither claim brought by Davis meets an exception to the time-limit rule.  Both claims are thus barred as untimely.  Both claims also fail on the merits.  Accordingly, we affirm.

### A.  *Brady* claim

Davis's *Brady* claim is untimely.  The relevant exception to the time-limit rule here is "if the facts supporting the claim 'were unknown to the [defendant] and could not have been ascertained by

the exercise of due diligence.'" *Id.* (alteration in original) (quoting Fla. R. Crim. P. 3.851(d)(2)(A)). Davis's claim does not fall within that exception. Davis knew not just of the slides but of the medical examiner's finding of pneumonia. The defense obviously could have examined the slides, including for the purpose of rebutting the medical examiner's testimony. *See id.* (concluding that *Brady* claim was untimely where defendant "had access to" relevant witnesses "and could have questioned" them regarding the matter).

Davis's *Brady* claim also fails on the merits. "To prevail on this claim, [Davis] must demonstrate that (1) favorable evidence which is exculpatory or impeaching, (2) was suppressed by the State, and (3) because the evidence was material, he was prejudiced." *Hutchinson v. State*, 343 So. 3d 50, 54 (Fla. 2022) (citing *Sweet v. State*, 293 So. 3d 448, 451 (Fla. 2020)). Davis asserts that the State suppressed not the slides but "the information contained within the slides." Davis falls far short of establishing that the State suppressed favorable evidence.

The only case law Davis offers in his initial brief supports general *Brady* propositions. In his reply brief, Davis attempts to distinguish cases cited by the State, including *Floyd v. State*, 18 So.

3d 432 (Fla. 2009), and *Tompkins v. State*, 872 So. 2d 230 (Fla. 2003). But those cases undermine Davis's claim. Indeed, they stand for the proposition that "evidence is not suppressed where the defendant was aware of the information." *Floyd*, 18 So. 3d at 451 (citing *Way v. State*, 760 So. 2d 903, 911 (Fla. 2000); *Tompkins*, 872 So. 2d at 239; *Provenzano v. State*, 616 So. 2d 428, 430 (Fla. 1993)). *Floyd*, for example, rejected a *Brady* claim predicated on the State's purported failure "to advise defense counsel of the 'differing' statements by [a witness]." *Id.* at 450. *Floyd* concluded that the defendant "was aware of the existence and content of the taped interview with [the witness]." *Id.* at 451. *Floyd* thus reasoned that because the defendant never requested the tape, "it could not have been 'suppressed.'" *Id.*

Here, Davis was aware of the existence of the slides *and* the evidence of pneumonia. Davis could have requested the slides so a defense expert could examine them to potentially rebut the medical examiner's opinions. No evidence was suppressed.

Davis seeks to distinguish *Floyd* and other cases by arguing that he requested but "received *inaccurate* information" in the form of Dr. Floro's opinion that, among other things, the victim

- 11 -

contracted pneumonia after her admission to the hospital. Davis thus claims he "had no reasonable basis to think the slides contained any exculpatory information until his expert alerted him to Dr. Floro's faulty testimony."[3] But defendants routinely cross-examine State witnesses to expose "faulty testimony." There is no reason why Davis could not have done so—especially given his claim that the victim's respiratory distress had nothing to do with blunt trauma to the head.[4]

Although not addressed by the circuit court, Davis's claim also fails the "material" prong. This Court has consistently said—including in 2020—that the State provided overwhelming or ample evidence. *See, e.g.*, *Davis*, 304 So. 3d at 285-86 (concluding that Davis's *Brady* claim regarding Cotton's testimony "fail[ed] on the materiality prong," given the "ample evidence that Davis

---

3. To the extent Davis asserts a *Giglio* claim regarding Dr. Floro's testimony, the claim is inadequately briefed and was never presented below.

4. Davis's attempt to label Dr. Floro's conclusions as "*inaccurate*" is not exactly supported by Dr. Arden's supplemental report, which is somewhat equivocal in nature. Again, Dr. Arden at one point conceded "the pneumonia *could have* developed . . . in the hospital." (Emphasis added.)

intentionally injured the victim on [the day of the murder]").  Dr. Arden's supplemental opinion that the victim's pneumonia possibly developed pre-admission does not change our conclusion.

### B.  Newly discovered evidence

Davis's claim that the slide contents constitute newly discovered evidence under *Jones v. State*, 709 So. 2d 512 (Fla. 1998), is also untimely for having been brought outside the one-year time-limit rule.  As with his *Brady* claim, Davis fails to offer any plausible basis on which to conclude that he falls within the exception where "the facts on which the claim is predicated were unknown to [Davis] and could not have been ascertained by the exercise of due diligence."  Fla. R. Crim. P. 3.851(d)(2)(A); *see Stein*, 406 So. 3d at 175 (concluding that, just as defendant's *Brady* claim failed to meet the time-limit exception in rule 3.851(d)(2)(A) and was thus untimely, so too was defendant's newly discovered evidence claim, which "relie[d] on the same rule 3.851 time-limit exception").

Davis's claim also fails on the merits.  The *Jones* test for a facially sufficient claim "proceeds in two parts."  *Stein*, 406 So. 3d at 175.  The first prong requires that "the evidence must not have been known by the trial court, the party, or counsel at the time of

- 13 -

trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence." *Id.* (quoting *Long v. State*, 183 So. 3d 342, 345 (Fla. 2016)). Under the second prong, depending on whether the defendant seeks to vacate the conviction or sentence, respectively, the defendant must show that the evidence is "of such [a] nature that it would probably produce an acquittal on retrial," *Randolph v. State*, 403 So. 3d 206, 208 (Fla. 2024) (alteration in original) (quoting *Hutchinson*, 343 So. 3d at 53), or that it "would probably yield a less severe sentence," *id.* (quoting *Walton v. State*, 246 So. 3d 246, 249 (Fla. 2018)). Davis's claim fails both prongs.

As to the first prong, the evidence here plainly "could . . . have been discovered through due diligence at the time of trial." *Mosley v. State*, 397 So. 3d 1001, 1006 (Fla. 2024) (quoting *Sheppard v. State*, 338 So. 3d 803, 825 (Fla. 2022)). Again, the autopsy report disclosed the existence of the slides and the finding of pneumonia. If, as Davis alleged in his instant motion, his "account of the events" was "that [the victim] stopped breathing for no discernable reason," then one would think that the victim's pneumonia might be something for Davis to have explored rather than blindly accepting

the medical examiner's opinions.

In his reply brief, Davis attempts to analogize this case to *Swafford v. State*, 125 So. 3d 760 (Fla. 2013). But *Swafford* is distinguishable. There, the defendant was convicted of first-degree murder and sexual battery, and this Court agreed with the postconviction court's finding that "results from the retesting of the [victim's vaginal and anal] swabs qualifie[d] as newly discovered evidence," *id.* at 768, where the initial testing "got a positive result for acid phosphatase, a substance characteristically found in seminal fluid," but the retesting twenty years later "indicate[d] the opposite," *id.* at 762. The acid phosphatase evidence "was the linchpin of the State's case that a sexual battery occurred." *Id.*

Here, the medical examiner's examination of the slides in 1992 revealed evidence of pneumonia. Dr. Arden's re-examination of the slides thirty years later "corroborated that [the victim] had pneumonia." This case—with Dr. Arden's additional conclusions as to the timing of the pneumonia—is far more akin to the defense "merely obtaining a new expert," something we have said "cannot be the basis for a newly discovered evidence claim." *Howell v. State*, 145 So. 3d 774, 775 (Fla. 2013). Davis fails the first prong of

*Jones.*

Regarding the second prong of *Jones*, this Court recently said that the "*Jones* probability standard" is "more demanding" than "the *Brady* materiality standard." *Stein*, 406 So. 3d at 175 (citing *Truehill v. State*, 358 So. 3d 1167, 1185 (Fla. 2022)). Because Davis fails to meet the *Brady* materiality standard—as explained above—he necessarily fails to meet the *Jones* standard. And Dr. Arden's supplemental report regarding the victim's possible pre-admission pneumonia does not alter the calculus of any "cumulative analysis" by this Court.

### III. CONCLUSION

For the reasons stated above, we affirm the summary denial of Davis's fourth successive motion for postconviction relief.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, FRANCIS, and SASSO, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Duval County,
    Tatiana Radi Salvador, Judge
    Case No. 161992CF013193AXXXMA

Dawn B. Macready, Capital Collateral Regional Counsel, Alice Copek, Assistant Capital Collateral Regional Counsel, and Nida Imtiaz, Assistant Capital Collateral Regional Counsel, Northern Region, Tallahassee, Florida,

for Appellant

James Uthmeier, Attorney General, Tallahassee, Florida, and Leslie T. Campbell, Senior Assistant Attorney General, West Palm Beach, Florida,

for Appellee