703 So.2d 1055 (1997)
Toney Deron DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. 86363.
Supreme Court of Florida.
November 6, 1997.
Rehearing Denied January 9, 1998.
*1056 Nancy Daniels, Public Defender; and Bill Salmon, Special Assistant Public Defender, Gainesville, for Appellant.
Robert A. Butterworth, Attorney General and Mark S. Dunn, Assistant Attorney General, Tallahassee, for Appellee.
PER CURIAM.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon Toney Deron Davis. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
Davis was charged with and convicted of first-degree felony murder, aggravated child abuse, and sexual battery for the murder of Caleasha Cunningham on December 9, 1992.
The sentencing order states that the victim was two years old when she was killed. Davis was twenty-two. Davis first met the victim's mother, Gwen Cunningham, in 1992 and lived with her from September 1992 until he was arrested on December 9, 1992. On the day of the murder, the mother left her childthen in good health and without injuriesin Davis's care while she ran an errand.
Thomas Moore, an acquaintance of Davis's, testified that he arrived at the apartment at around 12:45 p.m. and that Davis answered the door with the victim draped over his arm. Moore said Davis told him Caleasha had choked on a french fry. Moore said that after he called 911 and returned to the apartment, Davis was giving the victim mouth-to-mouth resuscitation. Moore went to the hospital with Gwen Cunningham when she returned.
Davis testified that he had left Caleasha and his friend Moore alone in the apartment at about 12:30 p.m. and went to make some phone calls. He said that when he returned, Moore was gone and Caleasha was having a seizure. He says he administered CPR, put her in the shower to revive her, and accidentally dropped her in the shower. Davis said that when Moore returned, he had him call 911. Davis said that Moore asked him not to mention that he had been with Caleasha because Moore had marijuana in his possession. Sergeant Phillips testified that Davis told him he was alone with the child.
A neighbor, Janet Cotton, testified that she heard a child crying in Cunningham's apartment and a lot of thumping noises coming from the apartment at approximately noon. She heard Davis say in a loud, angry voice, "Sit down." She said that thirty minutes *1057 after the "ruckus" ended, rescue personnel arrived.
The victim was wet, unconscious, and had blood in her mouth when she was examined in the apartment. She was naked from the waist down, although she had been fully clothed when left with Davis. Davis said that the victim was choking on a french fry and he had been trying to revive Caleasha.
The emergency-room doctor who treated the victim, Doctor DeNicola, testified that the victim was brought in at around 1:40 p.m. with bruising, swelling of the brain, and pools of blood in the skull. Doctor Whitworth, who examined the child at the request of state child welfare authorities, testified that the injuries indicated vaginal penetration by a penis, a finger, or an object. The medical examiner, Doctor Floro, testified that there was no injury to the vaginal area, but that it could have healed quickly. He said the victim had suffered four separate blows to the head, causing cerebral hemorrhage. This was the cause of death.
There was additional bruising, and there was a large collection of blood at the back of the head which was not consistent with being accidentally dropped. The child was revived but died shortly afterward on December 10, 1992.
In the bed shared by Davis and Gwen Cunningham, police found a hair bow which had been placed in the victim's hair before she was left with Davis. There was blood on the toilet seat and tank, on a sheet in the bedroom, and on the floor where the victim had been lying. There was also blood on the sink counter, on a grocery bag, on a washcloth, and on a blanket and pillowcase. There was blood which was found to be the victim's on the crotch region of the shorts Davis was wearing and on his underwear.
Gwen Cunningham testified that there were no blood stains anywhere when she left, that Caleasha did not sleep in bed with her, and that there were no hair ribbons in the bed when she left. She said Caleasha was clothed when she left.
The jury recommended the death penalty by a vote of eleven to one. After considering a presentence report and memoranda from both sides, the court followed the jury's recommendation and imposed the death penalty.
The judge found two aggravators: that the murder was committed during the course of a sexual battery and that it was heinous, atrocious, or cruel (HAC). The judge rejected the statutory mitigator of "no significant prior criminal history," based on Davis's three prior convictions. The judge evaluated the following nonstatutory mitigating factors suggested by the defense: Davis's family background (from evidence offered to show Davis was a good student, was a good child, had musical talent, wrote poetry, and attended church), that he was a good person who did not smoke or drink, that he was not violent, and that the evidence against him was circumstantial only. The judge found that the "good student" mitigating circumstance was not established, but considered the rest of the family background factors and gave them some weight. He found that the prior criminal history disproved the contention that Davis was a "good person," and that his not smoking and drinking were irrelevant. Also, the prior history included a crime of violence, so the "not violent" factor was not found to exist. Also, the circumstantial evidence mitigator was found not proven and irrelevant as a mitigator or an aggravator.
Davis raises eight issues in this appeal. He argues (1) it was error not to follow Nelson v. State[1] and Faretta v. California[2] when he moved to discharge court-appointed counsel before trial; (2) it was error to deny his motion for judgment of acquittal; (3) because the evidence failed to prove the victim was alive when vaginal penetration occurred, the sexual battery conviction should be reversed; (4) it was error to admit victim impact evidence which did not satisfy the statute; (5) the court erred in considering and finding HAC where there was no evidence on or jury consideration of the aggravator; (6) it was error to find HAC proven; (7) it was error to find the "committed during *1058 the course of sexual battery" aggravator; and (8) the death penalty is disproportionate.
We have conducted an independent review of the record, and we find competent and substantial evidence to support the convictions and sentence. We address Davis's arguments below.
As his first argument, Davis asserts that the court erred by not following the procedures set out in Nelson and Faretta when he moved to discharge his court-appointed counsel before trial. Davis's "motion to discharge" was ambiguous at best. At different points in the proceedings, he expressed dissatisfaction with his attorney. At the March 21, 1994, pretrial conference, he stated:
THE DEFENDANT: If I could, could I make a statement for the record?
Ilike I say, I don't feel I'm being adequately represented, and I would like to request the court
THE COURT: Have you talked to Mr. Adams about this?
THE DEFENDANT: No. [N]ot since November, I haven't even heard anything from him.
THE COURT: They're conducting all evidence in the case, serology blood test, which is why we're not ready for trial today. But I'll make sure that he's here on April 4th when I have the next pretrial. I'll let you talk to him.
If you want somebody else then, you can discuss it at that time, but I'll have to have him here. But I will talk to you about it.
On April 5, 1994, the matter was brought up again:
THE COURT:....
Mr. Davis, the last time we had you over, you had indicated that you were not happy with the way things were proceeding?
THE DEFENDANT: Yes, sir.
THE COURT: Okay, I was asking Mr. Adams about it. Mr. Adams, could you state for the record what's going on?
At this point, Davis's attorney detailed the work he was currently doing to prepare for Davis trial. The judge continued:
THE COURT: Mr. Davis, it sounds like they're doing everything they can to get it ready. It doesn't sound like it's going to be a real simple case to get tried.
....
It's ayou know, it's a case where the state is seeking to put you in the electric chair, so it's not one where you should be in any rush for Mr. Adams to go to trial before he's ready. It's only going to be one trial, and the outcome of it is of absolute[ly] vital importance to all of us, but to you more than anybody.
He may not be at the jail as frequently as you would like to see him, but he's definitely working on your case, he's not just sitting.
The judge proceeded to set an additional pretrial date without further comment from Davis.
Under Nelson, an inquiry is appropriate when an indigent defendant attempts to discharge current court-appointed counsel and obtain new court-appointed counsel prior to trial due to ineffectiveness. Branch v. State, 685 So.2d 1250, 1252 (Fla.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1709, 137 L.Ed.2d 833 (1997). As in Branch, here we find Nelson inapplicable because it is not clear that Davis was seeking to discharge his counsel, and "Branch's comments seemed to be a general complaint, not a formal allegation of incompetence." Branch, 685 So.2d at 1252; see also Windom v. State, 656 So.2d 432, 437 (Fla.1995) (holding no further inquiry required where it was not clear that defendant had moved to discharge counsel due to incompetence); Bowden v. State, 588 So.2d 225, 230 (Fla.1991) (finding no further inquiry necessary when defendant merely expressed dissatisfaction with counsel's performance). Davis never made an unequivocal request to discharge his court-appointed counsel; he subsequently allowed his attorney to represent him throughout the trial.[3]
*1059 "As a practical matter, a trial judge's inquiry into a defendant's complaints of incompetence of counsel can be only as specific and meaningful as the defendant's complaint." Lowe v. State, 650 So.2d 969, 975 (Fla.1994). Davis's silence after hearing what his attorney had been doing to ready the case for trial would lead one to believe that Davis felt his concerns had been heard by the judge and his lawyer and he was content to proceed.
We dealt with a situation analogous to this one in Watts v. State, 593 So.2d 198, 203 (Fla.1992). Before the trial in that case, Watts informed the trial court that he was dissatisfied with his attorneys because they allegedly had not been to see him in the jail, and he requested that another attorney be appointed. No inquiry was made, but his counsel explained that Watts' complaint was probably based on his misunderstanding of what the attorney was doing to prepare Watts' case for trial. We held:
First, because there was no unequivocal request for self-representation, Watts was not entitled to an inquiry on the subject of self-representation under Faretta. Hardwick v. State, 521 So.2d 1071, 1073 (Fla.), cert. denied, 488 U.S. 871, 109 S.Ct. 185, 102 L.Ed.2d 154 (1988). We also reject Watts' claim that the trial court erred by failing to conduct further inquiry in connection with his request for another attorney. Where a defendant seeks to discharge court-appointed counsel due to alleged incompetency, it is incumbent upon the trial court to make a sufficient inquiry of the defendant and counsel to determine whether there is reasonable cause to believe that counsel is not rendering effective assistance. Hardwick, 521 So.2d at 1074; Nelson v. State, 274 So.2d 256 (Fla. 4th DCA 1973). However, under the circumstances present in this case, no further inquiry was warranted.
Watts, 593 So.2d at 203. Davis made no request for self-representation, so there is no Faretta issue. As in Watts, Davis merely expressed general dissatisfaction with his attorney. Accordingly, we find that the court did not err.
Davis's argument that it was error to deny his motion for judgment of acquittal is without merit. He argues that because the evidence presented at trial was circumstantial and not inconsistent with any reasonable hypothesis of innocence, he was entitled to acquittal. We have repeatedly held that a motion for judgment of acquittal should not be granted unless there is no view of the evidence which the jury might take favorable to the opposite party that can be sustained under the law. See, e.g., Gudinas v. State, 693 So.2d 953, 962 (Fla.1997); Rogers v. State, 660 So.2d 237, 241 (Fla.1995); DeAngelo v. State, 616 So.2d 440, 442 (Fla.1993). When the state relies upon purely circumstantial evidence to convict an accused, we have always required that the evidence be not only consistent with the defendant's guilt but also be inconsistent with any reasonable hypothesis of innocence. Orme v. State, 677 So.2d 258, 264 (Fla.1996), cert. denied,___ U.S. ___, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997). The neighbor's testimony, the bloodstain evidence, the fact that Davis was alone in the apartment with the victim, the fact that there were no french fries found in the victim's stomach, the fact that Davis could not specify how the victim actually hit the floor when he supposedly dropped her in the shower, the fact that the State was able to show the improbability of Davis's statement that Moore was actually responsible for the killingall of these circumstances provided evidence such that the jury could have excluded every reasonable hypothesis except that of guilt. See, e.g., Mungin v. State, 689 So.2d 1026, 1029 (Fla.1995); State v. Law, 559 So.2d 187, 188 (Fla.1989); Davis v. State, 90 So.2d 629, 631-32 (Fla.1956).
Davis raises as his third argument that the evidence failed to prove the victim was alive when vaginal penetration occurred and that therefore the sexual battery conviction should be reversed. This issue is meritless. Whether the victim was alive or dead at the time of sexual union is an issue of fact to be determined by the jury. Owen v. State, 596 So.2d 985, 987 (Fla.1992). After "competent, substantial evidence has been submitted *1060 on each element of the crime, it is for the jury to evaluate the evidence and the credibility of the witnesses." Holton v. State, 573 So.2d 284, 290 (Fla.1990) (quoting Hufham v. State, 400 So.2d 133, 135-36 (Fla. 5th DCA 1981)). Captain Wade, one of the paramedics who transported the victim from the apartment to the hospital, testified that he was able to revive the child at one point. He explained further: "After we had given the patient the medication and after about a minute or two duration, the patient then regained her own pulse and blood pressure." Also, the examinations at the apartment and the hospital revealed both blood coming from the victim's vaginal canal and fresh hemorrhages. Also, the jury heard evidence of the bloodstains on Davis's shorts and underwear. From this and other testimony we find that there was competent, substantial evidence on which the jury could have based its finding that the victim was alive when vaginal penetration occurred.
We find no merit to Davis's fourth argument, that it was error to admit the victim impact evidence presented. Over objection from Davis, the court allowed a statement written by the victim's mother to be introduced as evidence and read by her to the jury. The statement concerned the impact of the child's death on her friends and family and was offered as victim impact evidence under section 921.141(7), Florida Statutes (1995). Before the statement was read, the judge held a sidebar conference. The state cited Payne v. Tennessee,[4]Hodges v. State,[5] and Window v. State,[6] to support the statement's admission. Davis argued that the statement to be presented was purely inflammatory and lacked relevance. Having heard argument from both sides, the judge ruled that the written statement was admissible. We find no abuse of discretion in admitting the statement. The statement discussed the victim's importance to her brother, sister, mother, family, and friendsclearly the type of evidence contemplated by the decisions of this Court and the United States Supreme Court. See, e.g., Bonifay v. State, 680 So.2d 413, 419-20 (Fla.1996) ("Clearly, the boundaries of relevance under the statute include evidence concerning the impact to family members.").
We find no merit to Davis's fifth argument, that it was error for the court to consider and find the HAC aggravating circumstance where there was no evidence on or jury consideration of the aggravator. The jury was not instructed on the HAC circumstance; it was first proposed after the jury had given its recommendation. The State raised the aggravator in its sentencing memorandum and argued it at the sentencing hearing. Davis's attorney argued as to why HAC was not applicable. Davis did not object to raising the factor outside the purview of the jury; he only argued that the evidence did not support it. His complete argument was:
Just one thing briefly, Your Honor. That based on Mr. Bledsoe's testimony and his construction of the facts that he will ask you to find the particular crime heinous, atrocious and cruel under speculation and guesswork. And I don't think you can do that based on these facts.
The only facts that you've got that was brought out from this case was that the wounds to the head of the child could have been done by an accident. That we do know from the facts that there was a fall. The child did fall. And the child could have had those wounds established by a fall. There was no eyewitnesses to the facts of what happened.
So I think that when he stretches it to 30 minutes that the child was going through torture based on what Janet Cotton said that he's asking the Court to say, well, we can find an aggravating factor based on speculation. I don't think the Court can do it that way. And I think based on his argument that's what he's asking the Court to do.
Nowhere does he argue that it was improper procedurally for the judge to consider HAC, only that it was not supported by the facts. Therefore, this issue is not preserved.
*1061 However, even if it had been, it is without merit. We have held that it is not error for a judge to consider and find an aggravator that was not presented to or found by the jury. See, e.g., Hoffman v. State, 474 So.2d 1178 (Fla.1985) (court's finding of HAC was not error even though jury was not instructed on it); Fitzpatrick v. State, 437 So.2d 1072, 1078 (Fla.1983) (finding of previous conviction of violent felony was proper even though jury was not instructed on it.). In Engle v. State, 438 So.2d 803, 813 (Fla.1983), the appellant asserted that his due process rights were violated when the appellee was permitted to argue two aggravating factors before the judge at sentencing which had not been argued before the jury. He argued that he should have been allowed "to have the existence and validity of aggravating circumstances determined as they were placed before his jury." Id. We rejected this argument: "The trial judge, however, is not limited in sentencing to consideration of only that material put before the jury, is not bound by the jury's recommendation, and is given final authority to determine the appropriate sentence." Id. We find no error.
Davis also argues that it was error for the judge to find the HAC aggravating circumstance proven. This issue is also without merit. To support the finding of HAC, the sentencing order cited the victim's age (two years old), the fact that the victim was crying throughout the entire ordeal, the fact that the victim was alone with Davis, and the fact that Davisin killing the victiminflicted four vicious blows to the head that rendered her unconscious. The judge found that the murder was both conscienceless or pitiless and "unnecessarily tortuous to the victim," citing Richardson v. State, 604 So.2d 1107, 1109 (Fla.1992), and Rivera v. State, 561 So.2d 536, 540 (Fla.1990).
Although Davis suggests that the evidence did not prove which of the blows came first, and that there is no conclusive means of knowing that the reason the child was crying was because she was being tortured, the testimony of the next-door neighbor and the results of the physical examinations of the victim provide ample evidence from which the judge could have found HAC proven. The neighbor testified that just thirty minutes before the rescue unit arrived, she heard crying accompanied by thumping noises, and she heard Davis say in a loud, angry voice, "Sit down." The victim had been alone with Davis. The victim was naked from the waist down, wet, unconscious, and had blood in her mouth when examined in the apartment; she had bruising, swelling of the brain, and pools of blood in the skull; Dr. Whitworth testified that the injuries indicated vaginal penetration by a penis, a finger, or an object; and the medical examiner testified that there were four separate blows to the head, causing cerebral hemorrhage. There was blood on the toilet seat and tank, on a sheet in the bedroom, on the floor where the victim had been lying, on the sink counter, on a grocery bag, on a washcloth, on a blanket and pillowcase, and on the crotch of the shorts Davis was wearing and on his underwear. The victim must have felt sheer terror during the course of the murder. See, e.g., Preston v. State, 607 So.2d 404, 409-10 (Fla. 1992); Swafford v. State, 533 So.2d 270, 277 (Fla.1988) (both holding that mental state or anguish of victim is proper for court to consider when deliberating on HAC). There is ample evidence from which the judge could have concluded this crime was conscienceless or pitiless and "unnecessarily tortuous to the victim."
Davis' argument that it was error to find the sexual battery aggravator established is meritless. As discussed in issue three, the sexual battery conviction had competent and substantial evidence supporting it. A contemporaneous conviction for sexual battery warrants finding in aggravation that the murder was committed while engaged in the commission of a sexual battery. Cf. Perry v. State, 522 So.2d 817, 820 (Fla.1988) (contemporaneous conviction for armed robbery warranted finding murder was committed while engaged in the commission of a robbery).
We reject Davis's argument that the death penalty is disproportionate in this case. There were two aggravating factors, no statutory mitigation, and slight nonstatutory mitigation. "Where there are one or more valid aggravating factors that support a death sentence and no mitigating circumstances to *1062 weigh against the aggravating factors, death is presumed to be the appropriate penalty." Blanco v. State, 452 So.2d 520, 526 (Fla.1984) (citing White v. State, 446 So.2d 1031 (Fla. 1984); Armstrong v. State, 399 So.2d 953 (Fla.1981); State v. Dixon, 283 So.2d 1 (Fla. 1973)). We have held that the death penalty is appropriate in similar situations. See, e.g., Geralds v. State, 674 So.2d 96 (Fla.) (two aggravating circumstancesHAC and murder in the course of a felonyand some nonstatutory mitigation still justified imposition of the death penalty), cert. denied,___ U.S. ___, 117 S.Ct. 230, 136 L.Ed.2d 161 (1996); Cardona v. State, 641 So.2d 361 (Fla. 1994) (one aggravating circumstance HACand statutory mitigation still justified imposition of the death penalty for the murder of a three-year-old child). The sentence is proportionate.
We find no merit to Davis's arguments. Accordingly, we affirm the convictions and the sentence of death.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] 274 So.2d 256 (Fla. 4th DCA 1973).
[2] 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
[3] Although Davis did subsequently express dissatisfaction with his attorney during the trial by asking to make his own closing arguments (in lieu of testifying), stating that he had wished to be co-counsel, and arguing that counsel did not ask all the questions of witnesses that Davis wished, he does not argue now that the denial of his request was error at that stage.
[4] 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991).
[5] 595 So.2d 929 (Fla.1992).
[6] 656 So.2d 432 (Fla.1995).