NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

HENRY MANSFIELD,      )
         )
      Appellant,     )
         )
v.         )     Case No. 2D15-4325
         )
STATE OF FLORIDA,     )
         )
      Appellee.     )
_____)

Opinion filed September 15, 2017.

Appeal from the Circuit Court for Desoto
County; James S. Parker, Judge.

Howard L. Dimmig, II, Public Defender,
and Matthew J. Salvia, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Donna S. Koch,
Assistant Attorney General, Tampa,
for Appellee.

SILBERMAN, Judge.

Henry Mansfield seeks review of the order revoking his drug offender

probation based on a new law violation of sale of a controlled substance. We reverse

based on the trial court's failure to conduct an adequate preliminary Nelson[1] inquiry and

---

[1]Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973).

a competency hearing.  While a reversal on these issues renders Mansfield's vindictive

sentence issue moot, the trial court's treatment of Mansfield based on their prior

acquaintance is troubling.  We therefore direct that the proceedings on remand be

conducted by a different judge.

## 1.  Preliminary Nelson Inquiry

While he was incarcerated pending the revocation hearing, Mansfield filed

a pro se "Request/Grievance/Appeal Form" in which he stated:

> Judge James S. Parker Let you know on the 7-8-15 Frank
> Ribel don't work on my case he is frie [sic].  No show Ribel
> for 9 months I saw Ribel about 4 time pluse [sic] I have not
> gone to court on my V.O.P  I like to know what gonsing [sic]
> on about it thank you.

Defense counsel construed this as a request to discharge counsel and filed a "Notice of

Nelson Faretta[2] Hearing" to have the request considered.  At the hearing, it immediately

became clear that the court was a long-time acquaintance of Mansfield.  The court

began the proceedings by asking, "And, Henry, what's this about you want to represent

yourself?"  Mansfield replied, "Well, my Nelson, I've been able to take—" before he was

interrupted by the court.

The proceedings took a strange turn, and the following exchange

occurred:

> THE COURT:  Now I've known you all your life.
>
> THE DEFENDANT:  Yeah.  I know it.  I made—
>
> THE COURT:  You never did graduate from DeSoto High
> School, did you?  Did you finally graduate?

---

[2]Faretta v. California, 422 U.S. 806 (1975).

THE DEFENDANT:  Nope.

THE COURT:  That's what I thought.

THE DEFENDANT:  I walked down the, you know, walk.

THE COURT:  And I remember when you was charged with cattle rustling—

THE DEFENDANT:  Now that been a long time ago.

THE COURT:  — of Bill DeShawn's (phonetic) cattle out on— or cow out on Highway 70, right?

THE DEFENDANT:  Yeah.  But you see defense—

THE COURT:  Well, I just remember all those things, Henry.

THE DEFENDANT:  If you find that—if you find that too, the caboot (phonetic) didn't match my gun, if you remember right.

THE COURT:  You got what?

THE DEFENDANT:  When they took the ballistic test, it was not my gun.

THE COURT:  Oh, okay.

THE DEFENDANT:  But I got (indiscernible) at any rate.

THE COURT:  All right.  All right.

THE DEFENDANT:  You know, (indiscernible).

THE COURT:  So anyhow, why do you want to represent yourself?

Mansfield replied, "Well, really I don't.  I need somebody to help me.  I need to get out.  I need to start working."  The court started to address Mansfield's dissatisfaction with counsel stating, "Okay.  Mr. Ribel has had you examined [for

competency] and tried to every other way—"  But then the court abruptly decided to offer Mansfield a plea.

The court offered Mansfield 38.7 months which was the lowest permissible sentence under the guidelines.  Mansfield said he needed to get out of jail so he could buy a truck.  The court said Mansfield was not getting out of jail.  The court told Mansfield that he was subject to a maximum of forty-five years in prison and asked if Mansfield wanted to accept the plea offer.

Mansfield briefly disputed the strength of the evidence against him and then returned to his complaints about trial counsel.  Mansfield said, "He said I'll get (indiscernible).  I ain't telling him nothing.  He—you know, he ain't doing nothing.  I want to get my ASFA (phonetic), go get me a good lawyer, on the street, (indiscernible)."  The following exchange then occurred:

> THE COURT:  Well, you got the money to hire a good lawyer?
>
> THE DEFENDANT:  Well, my people do or I can (indiscernible).
>
> THE COURT:  Okay.  When are you going to do that?
>
> THE DEFENDANT:  Well, they're not going to get him until I talk to my people.  Yes, I can come up and get me a damn good lawyer.  But I can't not sending [sic] my tail in jail for no reason (phonetic).
>
> THE COURT:  Well, you really don't want to represent yourself now, do you?
>
> THE DEFENDANT:  I can't represent myself.  I ain't—I ain't—
>
> THE COURT:  Okay.
>
> THE DEFENDANT:  —got that much knowledge.

- 4 -

THE COURT: Well, until you hire an attorney then, Mr. Ribel is your only choice. And he'll do everything in the world for you legally, but some of the things you think is legal, that's not legal.

THE DEFENDANT: Uh-huh.

THE COURT: We could have a hearing and go from there. So that would be—the next hearing date is when?

Defense counsel responded by saying, "Judge, we've been through quite a few things here with Henry." Counsel said he had Mansfield's competency evaluated "because to me he seemed to be in denial of some of the things that were obvious on the video" of the controlled buy that formed the basis for the new law violation. Counsel said he had also hired an expert to determine whether the video had been altered. It had not. Counsel said that he and Mansfield "had been fortunate enough" to get an offer from the State of twenty-four months in prison followed by two years of drug offender probation. Based on the circumstances, counsel recommended that Mansfield accept the State's offer and noted that Mansfield had already served eleven months.

Mansfield said he had served ten months and would accept a sentence of time served followed by two years of probation. Defense counsel told the court, "Well, anyway, that's where we are, and that's how we got here. And when Henry sent us the letter saying he wanted to get new counsel, that's when we asked the Court—" The court responded:

> Well, he is free to get new counsel if he wants to hire them, but it looks like to me you done a lot of work in this case. You got Henry a good offer, and Henry traditionally has always been in kind of denial about the facts of the case, of any case, he has been involved in. And I think this is Henry's self-defense, I guess: you can't convict nobody on mouth-to-mouth evidence.

Counsel told the court that they would lose the case if they went to a revocation hearing and suggested that Mansfield did not appreciate that.

Mansfield was getting agitated and responded, "Maybe I can go in front of another judge, ask for another judge, everything."  Mansfield said that the court's action of signing his arrest warrant showed that the court believed he was guilty.  The court denied this.  Mansfield became more agitated, and the following exchange occurred:

> THE DEFENDANT:  Okay.  I know you all don't like me, especially that thing over the (indiscernible) DA.
>
> THE COURT:  Nobody cares— no—
>
> THE DEFENDANT:  I know who he is.  He—you know, when he (indiscernible).  He got a trial.  At the trial, he'll tell you—
>
> THE COURT:  Nobody has—nobody has anything against you, Henry.  Nobody has anything—
>
> THE DEFENDANT:  You know, he (indiscernible).  And he ain't that smart.  But you know what?  Some day God is going to say, hey, come to me.  You going to have a heart attack.  What he going to do?  When God call you home saying—God ain't calling you home.  God will send you to hell.
>
> THE COURT:  Okay.  Sounds good to me.  So anyhow—

The court reiterated the State's offer.  Mansfield reiterated that he would accept a sentence of time served followed by two years of probation.  The court said it would not impose probation because Mansfield had already violated.  Mansfield told the court, "I'm tore, James.  I've been knowing you for years and years and years.  I've been knowing you for a long time, too many years.  I've been knowing you. . . ."  The court understood that Mansfield was refusing the State's plea offer and said to counsel, "I'm sorry.  I mean, if he is in denial, he is in denial.  We'll just take it from there."

The next month Mansfield proceeded to the revocation hearing represented by Mr. Ribel. At that hearing, the court found that Mansfield had violated his probation and sentenced him to eight years in prison.

In Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973), the court set forth a procedure for handling a request to discharge court-appointed counsel. Maxwell v. State, 892 So. 2d 1100, 1102 (Fla. 2d DCA 2004).

> The first step in the procedure is the preliminary Nelson inquiry in which the court ascertains whether the defendant unequivocally requests court-appointed counsel's discharge and the court asks the reason for the request. The answer to the preliminary inquiry determines the next steps. If a reason for the request is court-appointed counsel's incompetence, then the court must further inquire of the defendant and his counsel to determine if there is reasonable cause to believe that court-appointed counsel is not rendering effective assistance and, if so, appoint substitute counsel. If the reasons for the request do not indicate ineffective assistance of counsel, then no further inquiry is required.

Id. (citations omitted). If there is no need for further inquiry or after such inquiry the court determines there is not reasonable cause to determine that counsel is ineffective, then the court must inform the defendant he or she is not entitled to substitute court-appointed counsel and will have to exercise his or her right to self-representation. Id. Before the court may allow a defendant to represent himself or herself, it must conduct a Faretta inquiry to determine that the defendant's waiver of the right to court-appointed counsel is knowing and intelligent. Id.

The preliminary Nelson inquiry is a critical step in the procedure for handling a request to discharge counsel. Maxwell, 892 So. 2d at 1102. "Depending on the answer to the preliminary Nelson inquiry, a complex, multi-faceted combined Nelson

and Faretta hearing could ensue, or the inquiry could end there." Id. The failure to conduct this preliminary inquiry in response to a defendant's request to discharge court-appointed counsel is a structural defect that requires reversal as per se error. Id. at 1103. Simply put, the trial court may not remove the possibility of discharging court-appointed counsel for incompetence without giving the defendant a chance to be heard on the issue. Id.

In this case, Mansfield filed a document that defense counsel and the court interpreted as a request to discharge counsel. Indeed, at the very beginning of the hearing the court asked Mansfield, "[W]hat's this about you want to represent yourself?" Even if the court had been uncertain as to whether the request to discharge counsel was unequivocal, the court did not conduct a preliminary Nelson inquiry to determine whether Mansfield's request was, in fact, unequivocal and did not inquire into the specific reasons for the requested discharge. The court asked Mansfield why he wanted to represent himself without addressing whether substitute court-appointed counsel would be appropriate.

In this way, the trial court improperly removed the possibility of discharging court-appointed counsel for incompetence without giving Mansfield a chance to be heard on the issue. Instead, the court skipped to the part of the Nelson hearing where it informed Mansfield he was not entitled to court-appointed substitute counsel and would have to represent himself. This failure to conduct a preliminary Nelson inquiry was per se error. See Torres v. State, 42 So. 3d 910, 913 (Fla. 2d DCA 2010); Milkey v. State, 16 So. 3d 172, 176 (Fla. 2d DCA 2009); Maxwell, 892 So. 2d at 1103.

- 8 -

The facts of this case are indistinguishable from those in Milkey.  There, Milkey appeared for a revocation hearing and told the court, "Your Honor, I'm not really happy with my counsel.  Is there anyway—"  Milkey, 16 So. 3d at 173.  The court interrupted by telling Milkey, "You can represent yourself if you wish."  Id.  Defense counsel told the court that a different attorney was representing Milkey on his new law violations.  The court replied, "She's not here.  You can have Ms. Chewning or you can represent yourself."  Id.  The revocation hearing was then conducted with Milkey being represented by Ms. Chewning.

This court reversed based on the trial court's failure to conduct a preliminary Nelson hearing so that Milkey could "express his desire to discharge counsel and explain the reasons for his request.  Upon hearing that Milkey was 'not really happy' with counsel, the court should have allowed him to finish his sentence to determine the basis of his dissatisfaction and whether some type of Nelson inquiry was necessary."  Id. at 176.  However, the court never gave "Milkey the opportunity to have his desire to discharge counsel 'come to light.' "  Id. (quoting Maxwell, 892 So. 2d at 1103).

Instead, the trial court either failed to recognize that further inquiry was required or merely assumed that defense counsel was not ineffective.  Id. at 176.  "[T]he trial court was not permitted to assume that Milkey's dissatisfaction was not based on counsel's incompetency or that a Nelson hearing, if conducted, would dispel any notion of counsel's incompetency."  Id.; see also Torres, 42 So. 3d at 913 ("[T]he trial court improperly assumed that Torres' dissatisfaction with counsel was not based on

counsel's incompetency or that a <u>Nelson</u> hearing, if conducted, would have dispelled any notion of counsel's incompetency.").

In this case, as in <u>Milkey</u>, the court refused to allow Mansfield to express his desire to discharge court-appointed counsel and explain the reasons for that request. Instead, the court appeared to assume that defense counsel was not ineffective and focused on the issue of whether Mansfield wanted to represent himself. It is true that defense counsel informed the trial court of some of the actions he had taken on Mansfield's behalf and the court stated that counsel had "done a lot of work in this case." However, despite Mansfield's efforts to do so, he was never given a chance to explain his concerns about counsel's performance. The same observation made in <u>Torres</u> applies here: "While it is possible that [the defendant's] claims would not have warranted a full <u>Nelson</u> inquiry, the record does not clearly establish this fact." 42 So. 3d at 913.

We recognize that Mansfield was being argumentative and had difficulty expressing himself, but this does not relieve the court of its duty to follow the procedures required by <u>Nelson</u> and <u>Faretta</u>. <u>See</u> <u>Torres</u>, 42 So. 3d at 914. Thus, the trial court erred by failing to conduct an adequate preliminary <u>Nelson</u> inquiry.

## 2. Competency Hearing

The trial court ordered a competency evaluation in April 2015, and Dr. Visser produced a report concluding that Mansfield was competent to proceed. At the beginning of the revocation hearing in September 2015, the trial court noted that it had received a copy of the report. However, the court did not conduct a competency hearing or even declare that Mansfield was competent to proceed. This was error.

Florida Rule of Criminal Procedure 3.210(b) requires a trial court that has reasonable grounds to believe a defendant is not competent to proceed to conduct a competency hearing. Dougherty v. State, 149 So. 3d 672, 677 (Fla. 2014); Cramer v. State, 213 So. 3d 1028, 1029 (Fla. 2d DCA 2017). This rule is mandatory, and the defense cannot waive the requirement of a hearing even if the experts find him or her competent to proceed. Dougherty, 149 So. 3d at 678; Cramer, 213 So. 3d at 1029. Thus, the trial court erred by failing to conduct a competency hearing.

**3. Vindictive Sentence**

This issue is rendered moot by our resolution of the first two issues. Nonetheless, we are troubled by the court's treatment of Mansfield based on their prior acquaintance. The court took an overfamiliar and condescending tone with Mansfield and mentioned irrelevant and potentially embarrassing information about Mansfield. Furthermore, the court appeared to assume Mansfield's guilt by initiating plea negotiations, urging Mansfield to accept a plea offer, and stating that Mansfield's rejection of the offer showed that he was in denial about the facts of his case.

Mansfield himself believed that the court thought he was guilty and did not like Mansfield. In fact, at one point Mansfield even suggested he should "go in front of another judge, ask for another judge." Finally, after conducting a full revocation hearing the court imposed a sentence that was more than double the 38.7-month sentence it had offered and four times the twenty-four-month sentence the State had offered. Simply put, the court's treatment of Mansfield presents questions regarding its ability to be fair and impartial in this case.

**4. Conclusion**

We reverse based on the trial court's failure to conduct an adequate preliminary <u>Nelson</u> inquiry and a competency hearing. On remand, Mansfield is entitled to a competency hearing before any further proceedings take place. Based on our concerns with the trial court's impartiality, we direct that all further proceedings be conducted by a different judge.

Reversed and remanded with directions.

CRENSHAW, J., Concurs.
LUCAS, J., Concurs in part and dissents in part with opinion.

LUCAS, Judge, Concurring in part and dissenting in part.

I concur with the court's decision to reverse and remand Mr. Mansfield's order of revocation because the trial court failed to conduct a competency hearing and render a determination about Mr. Mansfield's competency to proceed. I also agree that on remand the case ought to be assigned to a different judge. However, I respectfully disagree with the majority's conclusion that a <u>Nelson</u> hearing was required here because, from my reading of the record, Mr. Mansfield never made a "clear and unequivocal statement" that he wished to discharge his appointed counsel.[3] <u>See Davis v. State</u>, 136 So. 3d 1169, 1209 (Fla. 2014) ("[T]he requirements of <u>Nelson</u> depend upon a clear and unequivocal statement from the criminal defendant that he wishes to discharge counsel." (alteration in original) <u>Logan v. State</u>, 846 So. 2d 472, 477 (Fla. 2003))).

---

[3]Mr. Mansfield was represented by regional conflict counsel following the prior substitution of his representation by the public defender's office.

The court's opinion recounts a considerable portion of the meandering (and, yes, at times inappropriate) dialogue that transpired between the presiding judge and Mr. Mansfield in the course of this hearing, a hearing that was precipitated by Mr. Mansfield's pro se filing, which oscillated between an unarticulated complaint about Mr. Mansfield's counsel, an observation that Mr. Mansfield had not had his V.O.P. hearing, and a desire "to know what gonsing [sic] on." At the hearing, there was a lengthy exchange between Mr. Mansfield, the court, and his appointed counsel, and Mr. Mansfield expressed a panoply of concerns and complaints.

But with respect to the discrete point that would necessitate a <u>Nelson</u> hearing—that is, whether Mr. Mansfield was making a request to discharge his appointed counsel because of some perceived incompetence on his lawyer's part—I can find nothing in this record but equivocation and inchoate dissatisfaction on Mr. Mansfield's part: about his lawyer, his predicament in jail, his past, and his judge. There is no unequivocal request to discharge Mr. Ribel's representation. And when Mr. Mansfield was posed with a question from the court as to why he would want to represent himself, Mr. Mansfield's reply was that he did *not* want to represent himself; he was simply unhappy with being incarcerated and unable to work. Collectively, then, I construe Mr. Mansfield's complaints as nothing more than the "general complaints about defense counsel's trial strategy" or "dissatisfaction" that the Florida Supreme Court has held, repeatedly, do not warrant a <u>Nelson</u> hearing. <u>See, e.g.</u>, <u>Braddy v. State</u>, 219 So. 3d 803, 818 (Fla. 2017) ("This Court has consistently found a <u>Nelson</u> hearing unwarranted where a defendant presents general complaints about defense counsel's trial strategy and no formal allegations of incompetence have been made."

(quoting Morrison v. State, 818 So. 2d 432, 440 (Fla. 2002))); Davis, 136 So. 3d at 1209 ("Accordingly, expressions of disagreement with trial counsel's strategy or complaints about lack of communication—as in Davis's June 1994 letter—do not give cause for a Nelson hearing."); Logan, 846 So. 2d at 477 ("[G]eneralized complaints about court-appointed counsel's trial strategy or lack of contact or communication with the defendant do not constitute the kind of unequivocal request to discharge counsel necessary to trigger the requirements of Nelson."); Morrison v. State, 818 So. 2d 432, 441 (Fla. 2002) (holding that although defendant made "several requests to replace his counsel," since they all centered around dissatisfaction with his counsel's communications and litigation efforts, a Nelson hearing was not required); Sexton v. State, 775 So. 2d 923, 931 (Fla. 2000) ("This Court has consistently found a Nelson hearing unwarranted where a defendant presents general complaints about defense counsel's trial strategy and no formal allegations of incompetence have been made. See Davis v. State, 703 So. 2d 1055, 1058-59 (Fla. 1997); Gudinas [v. State], 693 So. 2d [953,] 962 n.12 (Fla. 1997); Branch v. State, 685 So. 2d 1250, 1252 (Fla. 1996).").

Nor, to my mind, did the trial court "improperly remove[] the possibility of discharging court-appointed counsel for incompetence without giving Mansfield a chance to be heard on the issue," as the majority states. Supra. Whatever else may be said about this lengthy, wending conversation in a hearing before an overly familiar judge, Mr. Mansfield had ample opportunity to speak and express his thoughts. Indeed, he did so repeatedly and freely throughout the entire course of the proceeding.

This case, then, bears little resemblance to Milkey v. State, 16 So. 3d 172 (Fla. 2d DCA 2009). In Milkey, the trial court cut a complaining defendant off mid-

sentence, and then, without allowing another utterance or sound from that defendant, proceeded to launch into a revocation of probation hearing.  From what the Milkey opinion recounts, after the defendant's stymied complaint about his lawyer, two brief exchanges between defense counsel and the court were all that ensued (one of which, apparently, involved the presiding judge cutting off defense counsel), and then, at the trial court's direction, the State called its first witness for the revocation proceeding.  Under those circumstances, we found error and offered this instruction: "Upon hearing that Milkey was 'not really happy' with counsel, the court should have allowed him to finish his sentence to determine the basis of his dissatisfaction and whether some type of [          ] Nelson inquiry was necessary."  Id. at 176.  But we took care in Milkey to distinguish several decisions that had held a Nelson hearing was not required, because those cases "reflect[ed] *some* discussion between the trial court and the defendant supporting a conclusion that the defendant's complaints had nothing to do with allegations of counsel's incompetence."  Id. at 177.  Here, Mr. Mansfield's dialogue with the circuit court exceeds twelve pages of transcribed proceedings.  There was considerable discussion between the defendant and the court about Mr. Mansfield's various complaints before Mr. Mansfield proceeded to his revocation hearing a month later.

It is hard, then, for me to see how Mr. Mansfield "was never given a chance to explain his concerns about counsel's performance," supra, when he so freely expressed so many complaints (including the generalized ones about his lawyer's efforts) over the course of this hearing.  I suspect the majority's conclusion in this regard may derive more from the tone of the trial court's interactions with Mr. Mansfield, which,

- 15 -

again, were by no means beyond reproof. Still, it is one thing to say this judge may have fallen short in the manner in which he responded to this defendant's complaints; it is quite another to say he prohibited that defendant from presenting a complaint. In my opinion, the record in this case supports the former conclusion, but not the latter.

Our trial judges require certitude as to when they will be required to convene a Nelson hearing and when they will not. Cf. Causey v. State, 623 So. 2d 617, 618 (Fla. 4th DCA 1993) (recognizing that expressions of dissatisfaction with counsel are "a daily occurrence in many trial courts"). For that reason, I respectfully dissent from that part of the court's holding today.