LUCAS; Judge, Concurring in part and dissenting in part. I concur with the court’s decision to reverse and remand Mr. Mansfield’s order of revocation because the trial court failed to conduct a competency hearing and render á determination about Mr. Mansfield’s competency to proceed. I also agree that on remand the case ought to be assigned to a different judge. However, I respectfully disagree with the majority’s conclusion that a Nelson hearing was required here because, from, my reading of the record, Mr. Mansfield never madé a “clear. and unequivocal statement” that he wished to discharge' his appointed counsel.[3] See Davis v. State, 136 So.3d 1169, 1209 (Fla. 2014) (“[T]he requirements of Nélson depend upon a clear and unequivocal statement from the criminal defendant that he ■wishes to discharge counsel.” (alteration in original) Logan v. State, 846 So.2d 472, 477 (Fla. 2003))). The court’s opinion recounts a considerable portion of the meandering (and, yes, at times inappropriate) dialogue that transpired between the presiding judge and Mr. Mansfield in the course of this hearing, a hearing that was precipitated by Mr. Mansfield’s pro se filing, which oscillated between an unarticulated complaint about Mr. Mansfield’s counsel, an observation that Mr. Mansfield had not had his V.O.P. hearing, and a desire “to know what gons-ing [sic] on.” At the hearing, there was a lengthy exchange between Mr. Mansfield, the court, and his appointed counsel, and Mr. Mansfield expressed a panoply of concerns and complaints. But with respect to the discrete point that would necessitate a Nelson hearing— that is, whether Mr, Mansfield was making a request to discharge his appointed counsel because of some perceived incompetence on his lawyer’s part—I can find nothing in this record but equivocation and inchoate dissatisfaction on Mr. Mansfield’s part: about his lawyer, his predicament in jail, his past, and his judge. There is no unequivocal request to discharge Mr. Ribel’s representation. And when Mr. Mansfield was posed with a question from the court as to why he would want to represent himself, Mr. Mansfield’s reply was that he did not want to represent himself; he was simply unhappy with being incarcerated and unable to work. Collectively, then, I construe Mr. Mansfield’s complaints as nothing more than the “general complaints about defense counsel’s trial strategy” or “dissatisfaction” that the Florida Supreme Court has held, repeatedly, do not warrant a Nelson hearing. See, e.g., Braddy v. State, 219 So.3d 803, 818 (Fla. 2017) (“This Court has consistently found a Nelson hearing unwarranted where a defendant presents general complaints about defense counsel’s trial strategy and no formal allegations of incompetence have been made.” (quoting Morrison v. State, 818 So.2d 432, 440 (Fla. 2002))); Davis, 136 So.3d at 1209 (“Accordingly, expressions of disagreement with trial counsel’s strategy or complaints about lack' of communication—as in Davis’s June 1994 letter—do not give cause for a Nelson hearing;”); Logan, 846 So.2d at 477 (“[GJeneralized complaints about court-appointed counsel’s trial strategy or lack of contact or communication with the defendant do not' constitute the kind of unequivocal request to discharge counsel necessary to trigger the requirements of Nelson.”); Morrison v. State, 818 So.2d 432, 441 (Fla. 2002) (holding that although defendant made “several requests to replace his counsel,” since they all centered around dissatisfaction with his counsel’s communications and litigation efforts, a Nelson hearing was not required); Sexton v. State, 775 So.2d 923, 931 (Fla. 2000) (“This Court has consistently found a Nelson hearing unwarranted where a defendant presents general complaints about defense counsel’s trial strategy and no formal allegations of incompetence have been made. See Davis v. State, 703 So.2d 1055, 1058-59 (Fla. 1997); Gudinas [v. State], 693 So.2d [953,] 962 n.12 (Fla. 1997); Branch v. State, 685 So.2d 1250, 1252 (Fla. 1996).”). Nor, to my mind, did thé trial court “improperly remove[] the possibility of discharging court-appointed counsel for incompetence without giving Mansfield a chance to be heard on the issue,” as the majority states. Supra. Whatever else may be said about this lengthy, wending conversation in a hearing .before an overly familiar judge, Mr. Mansfield had ample opportunity to speak and express his thoughts. Indeed, he did so repeatedly and freely throughout the entire course of the proceeding. This case, then, bears little resemblance to Milkey v. State, 16 So.3d 172 (Fla. 2d DCA 2009). In Milkey, the trial court cut a complaining defendant off mid-sentence, and then, without allowing another utterance or sound from that defendant, proceeded to launch into a revocation of probation hearing. From what the Milkey opinion recounts, after the defendant’s stymied complaint about his lawyer, two brief exchanges between defense counsel and the court were all that ensued (one of which, apparently, involved the presiding judge cutting off defense counsel), and then, at the trial court’s direction, the State called its first witness for the revocation proceeding. Under those circumstances, we found error and offered this instruction: “Upon hearing that Milkey was ‘not really happy* with counsel, the court should have allowed him to finish his sentence to determine the basis of his dissatisfaction and whether some type of [Redacted] Nelson inquiry was necessary.” Id. at 176. But we took care in Milkey to distinguish several decisions that had held a Nelson hearing was not required, because those cases “reflected] some discussion between the trial court and the defendant supporting a conclusion that the defendant’s complaints had nothing to do with allegations of counsel’s incompetence.” Id. at 177. Here, Mr. Mansfield’s dialogue with the circuit court exceeds twelve pages of transcribed proceedings. There was considerable discussion between the defendant and the court about Mr. Mansfield’s various complaints before Mr. Mansfield proceeded to his revocation hearing a month later. It is hard, then, for me to see how Mr. Mansfield “was never given a chance to explain his concerns about counsel’s performance,” supra, when he so freely expressed so many complaints (including the generalized ones about his lawyer’s efforts) over the course of this hearing. I suspect the majority’s conclusion in this regard may derive more from the tone of the trial court’s interactions with Mr. Mansfield, which, again, were by no means beyond reproof. Still, it is one thing to say this judge may have fallen short in the manner in which he responded to this defendant’s complaints; it is quite another to say he prohibited that defendant from presenting a complaint. In my opinion, the record in this case supports the former conclusion, but not the latter. Our trial judges require certitude as to when they will be required to convene a Nelson hearing and when they will not. Cf. Causey v. State, 623 So.2d 617, 618 (Fla. 4th DCA 1993) (recognizing that expressions of dissatisfaction with counsel are “a daily occurrence in many trial courts”). For that reason, I respectfully dissent from that part of the court’s holding today. , Mr. Mansfield was represented by regional conflict counsel following the prior sub.stitution of his representation by the public defender's office.