# Supreme Court of Florida

_____

No. SC19-1207
_____

**TONEY DERON DAVIS,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

August 27, 2020

PER CURIAM.

Toney Deron Davis, a prisoner under sentence of death, appeals the circuit court's order summarily denying his successive motion for postconviction relief, which was filed under Florida Rule of Criminal Procedure 3.851. We have jurisdiction, *see* art. V, § 3(b)(1), Fla. Const., and affirm for the reasons that follow.

## BACKGROUND

Davis was "charged with and convicted of first-degree felony murder, aggravated child abuse, and sexual battery," stemming from "the murder of [two-year-old] Caleasha Cunningham on December 9, 1992." *Davis v. State* (*Davis I*), 703 So. 2d 1055, 1056 (Fla. 1997), *cert. denied*, 524 U.S. 930 (1998). The

victim's mother, Gwen Cunningham, testified that "on the day of the murder," she left the victim—then fully clothed, "in good health and without injuries"—alone with Davis in their shared apartment. *Id.* At approximately 12:45 p.m., "Thomas Moore, an acquaintance of Davis's," visited the apartment. *Id.* Moore testified that "Davis answered the door with the victim draped over his arm." *Id.* After Davis told Moore that the victim "had choked on a french fry," Moore called 911. *Id.*

When rescue personnel arrived, the victim was unconscious, wet, and naked from the waist down. *Id.* at 1057. Blood was present in the bedroom and bathroom, and "blood which was found to be the victim's" was located on Davis's underwear and on "the crotch region" of his shorts. *Id.* The victim was taken to hospital, where she was "revived but died shortly afterward on December 10, 1992." *Id.*

At trial, "Davis testified that he had left [the victim] and his friend Moore alone in the apartment at about 12:30 p.m. and went to make some phone calls." *Id.* at 1056. "When he returned," Davis claimed, "Moore was gone and [the victim] was having a seizure." *Id.* Davis stated that "he administered CPR" to the victim, "put her in the shower to revive her, and accidentally dropped her in the shower." *Id.* He explained that "Moore asked him not to mention that he had been with [the victim] because Moore had marijuana in his possession." *Id.*

The State presented testimony from "[a] neighbor, Janet Cotton," who claimed to have "heard a child crying" and "a lot of thumping noises coming from" Cunningham's "apartment at approximately noon" on December 9, 1992. *Id.* Cotton explained that the noises lasted for about thirty minutes. *Davis v. State* (*Davis II*), 136 So. 3d 1169, 1189 (Fla. 2014). She further recalled hearing a " '[v]ery loud' and 'stern' 'male voice' that she recognized as Davis's, saying '[s]it down.' " *Id.* (alterations in original).

The emergency room physician who treated the victim testified that—in addition to bruising—the victim had "swelling of the brain and pools of blood in the skull." *Davis I*, 703 So. 2d at 1057. "[T]here was [also] a large collection of blood at the back of the head which was not consistent with being accidentally dropped." *Id.* Another doctor who examined the victim "testified that the injuries indicated vaginal penetration by a penis, a finger, or an object." *Id.* While the medical examiner "testified that there was no injury to the vaginal area," he explained that "it could have healed quickly." *Id.* He "said the victim had suffered four separate blows to the head, causing [the] cerebral hemorrhage" that resulted in her death. *Id.* The medical examiner further stated that no french fries were found in the victim's stomach. *See id.* at 1059.

A law enforcement officer testified that Davis claimed to have been alone with the victim. *Id.* at 1056. Law enforcement agents additionally stated that

- 3 -

Davis could not explain why blood was found in certain areas of the bedroom and bathroom or "specify how the victim actually hit the floor when he supposedly dropped her in the shower." *Id.* at 1059.

Davis was convicted of all charges, *id.* at 1056, and sentenced to death for the first-degree felony murder, *id.* at 1057. We upheld his convictions and his death sentence on direct appeal. *Id.* at 1062. Thereafter, we denied Davis's initial motion for postconviction relief and his habeas petition. *Davis II*, 136 So. 3d at 1209. We also affirmed the denial of his successive postconviction motion, *Davis v. State* (*Davis III*), 42 Fla. L. Weekly S235, S236, 2017 WL 656307, at *2 (Fla. Feb. 17, 2017), and denied his second petition for a writ of habeas corpus, *Davis v. Jones*, 235 So. 3d 301, 301 (Fla. 2018).

In 2019, Davis filed another successive postconviction motion, claiming the State committed *Giglio*[1] and *Brady*[2] violations. The circuit court summarily denied the motion. This appeal followed.

## ANALYSIS

Davis contends that the circuit court erred in summarily denying his claims that the State knowingly presented false testimony from trial witness Janet

---

1. *Giglio v. United States*, 405 U.S. 150 (1972).

2. *Brady v. Maryland*, 373 U.S. 83 (1963).

- 4 -

Cotton—in violation of *Giglio*—and suppressed Cotton's "true" testimony—in violation of *Brady*. Summary denial of a successive postconviction motion is appropriate "[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief." Fla. R. Crim. P. 3.851(f)(5)(B). Applying a de novo standard of review, we find that test satisfied here.

*Giglio*

We first address Davis's *Giglio* claim. To establish a *Giglio* violation, Davis must show "that: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." *Moore v. State*, 132 So. 3d 718, 724 (Fla. 2013). False testimony is material "if there is any reasonable possibility that it could have affected the jury's verdict." *Id.* (quoting *Tompkins v. State*, 994 So. 2d 1072, 1091 (Fla. 2008)). "The State . . . bears the burden to prove that the presentation of false testimony at trial was harmless beyond a reasonable doubt." *Id.* (quoting *Guzman v. State*, 868 So. 2d 498, 506 (Fla. 2003)).

In support of his claim, Davis relies on an affidavit from Cotton in which she states that—contrary to her trial testimony—she "did not hear a baby or child cry or scream on December 9, 1992." She further claims that she did not hear "a thumping noise" or Davis "yell, 'Sit down.'" Rather, Cotton states, she heard "crying and screaming" coming from a nearby apartment "[a]t some point" one or two days "before December 9, 1992." She claims that she "was put under a great

- 5 -

deal of pressure and duress by the State of Florida during multiple meetings with law enforcement." Cotton further recalls that she stayed in touch with a former state attorney, who—during their final conversation "several years ago"—offered to "take care" of criminal charges filed against her.

We conclude that the circuit court properly denied this claim. Even assuming Davis could prove that the State knowingly presented false testimony from Cotton, the use of this testimony was harmless beyond a reasonable doubt. Regardless of whether Cotton heard noises coming from Davis's apartment on December 9, 1992, the State presented ample evidence that the victim's injuries were not accidental and occurred while she was in Davis's care. This includes the testimony "that Davis was alone in the apartment with the victim," "the bloodstain evidence," the medical testimony regarding the nature of the victim's injuries, "the fact that there were no french fries found in the victim's stomach," and Davis's inability to explain how the victim fell or why blood was found in certain areas of the apartment. *Davis I*, 703 So. 2d at 1059. Accordingly, there is no reasonable possibility that Cotton's testimony affected the jury's verdict.

Davis contends, however, that Cotton's testimony was material because it was essential in refuting his defense that Thomas Moore was responsible for the victim's injuries. At trial, Davis testified that "at about 12:30 p.m.," he left the victim alone in the apartment with Moore while he made phone calls. *Davis I*, 703

So. 2d at 1056. Without Cotton's testimony that she heard noises—including "thumping" sounds, a child crying, and Davis's voice saying, "[s]it down"— coming from the apartment between 12:00 p.m. and 12:30 p.m., Davis claims that it would have been more difficult for the jury to rule out the possibility that Moore had injured the victim. *Davis II*, 136 So. 3d at 1189 (alteration in original).

This argument lacks merit for three reasons. First, even if Cotton had not testified, "[t]he jury would still be left with the impression . . . that Davis's defense evolved after he had time to contemplate the situation." *Id.* at 1188. "Davis did not begin to assert that someone else harmed the victim until after his conversations with the first responders and his interview with the investigating detectives." *Id.* He "spoke to seven people in six separate statements about what happened to the victim without ever asserting that Moore—or anyone else—was left alone with" her. *Id.*

Further, Davis claimed "that when he returned to the apartment after leaving the victim with Moore," there appeared to be nothing wrong with the victim. *Id.* He recalled that "[s]he looked normal, except for she wasn't breathing." *Id.* Yet medical testimony "render[ed] Davis's claim that the child appeared uninjured patently implausible." *Id.*

Finally, Davis failed to provide a credible "explanation of why he did not immediately implicate Moore." *Id.* At trial, Davis "testified that he promised not

to inform law enforcement about Moore's presence—and thus risked implicating

himself in the murder—because Moore was afraid of being charged with drug

possession." *Id.* at 1188-89.

The circuit court correctly determined that there is no reasonable possibility

that Cotton's testimony affected the jury's verdict.[3]  Accordingly, we affirm the

summary denial of Davis's *Giglio* claim.

*Brady*

Davis next argues that the circuit court erred in summarily denying his

*Brady* claim based on Cotton's testimony.  To establish a *Brady* violation, the

defendant has the burden to show "(1) that favorable evidence, either exculpatory

or impeaching, (2) was willfully or inadvertently suppressed by the State, and (3)

because the evidence was material, the defendant was prejudiced."  *Taylor v. State*,

62 So. 3d 1101, 1114 (Fla. 2011) (emphasis omitted).

Davis contends that the State violated *Brady* by suppressing Cotton's "true"

testimony.  But we conclude that Davis's *Brady* claim—like his *Giglio* claim—

fails on the materiality prong.  There is no "reasonable probability that, had"

Cotton's "true" testimony "been disclosed to the defense, the result of the

---

3. Davis further asserts that Cotton's statement should be considered cumulatively with evidence presented in prior postconviction claims when evaluating the materiality prong.  We conclude, however, that engaging in such a cumulative analysis would not change our determination.

proceeding would have been different." *Id.* (quoting *Guzman*, 868 So. 2d at 506). Whether or not Cotton heard noises coming from Davis's apartment on December 9, 1992, the State presented ample evidence that Davis intentionally injured the victim on that date.[4] We therefore conclude that the circuit court properly summarily denied this claim.

## CONCLUSION

For the reasons above, we affirm the circuit court's order summarily denying Davis's successive motion for postconviction relief.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, MUÑIZ, and COURIEL, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Duval County,
    Linda McCallum, Judge - Case No. 161992CF013193AXXXMA

Rick A. Sichta of The Sichta Firm, LLC., Jacksonville, Florida,

    for Appellant

---

4. The additional evidence Davis has presented in connection with this claim does not change our conclusion. This evidence is either similar to that we previously held procedurally barred, *see Davis III*, 42 Fla. L. Weekly at S236, 2017 WL 656307, at *1, immaterial even if considered cumulatively with Cotton's statement, or untimely or otherwise improperly presented in the instant appeal.

Ashley Moody, Attorney General, and Janine D. Robinson, Assistant Attorney General, Tallahassee, Florida,

    for Appellee